731 A.2d 1228

TWBC III, INC., A NEW JERSEY CORPORATION, AND 1331 OCEAN AVENUE SEA BRIGHT ASSOCIATES, A PARTNERSHIP, PLAINTIFFS–APPELLANTS, v. THOSE CERTAIN UNDER-WRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. 894 305481 92, H. JAMES GRIFFITH, PRINCETON RISK MANAGERS, INC., DEFENDANTS–RESPONDENTS. AND R.A.M. INSURANCE AGENCY, INC., AND RONALD MANZO, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 1, 1999—Decided July 13, 1999.

Before Judges HAVEY, PAUL G. LEVY and LESEMANN.

*Robert W. Beattie*, argued the cause for appellants (*Beattie and Murray*, attorneys; *Mr. Beattie*, on the brief).

*Thomas F. Quinn*, argued the cause for respondents Princeton Risk Managers, Inc. and H. James Griffith (*Wilson, Elser, Moskowitz, Edelman and Dicker*, attorneys; *Mr. Quinn*, of counsel; *Mr. Quinn* and *Robert A. Berns*, on the brief).

*Stanley W. Kallman*, argued the cause for respondent Those Certain Underwriters at Lloyd's London Subscribing to Policy No. 894 305481 92 (*Gennett, Kallmann, Antin and Robinson*, attorneys; *Mr. Kallmann*, of counsel and on the brief).

The opinion of the court was delivered by

LESEMANN, J.S.C. (temporarily assigned).

Plaintiffs, owners and operators of a nightclub and beach club which operate, respectively, in two buildings in Sea Bright, appeal

from a summary judgment which dismissed their complaint seeking recovery under an insurance policy for wind damage suffered by the nightclub. The two issues presented by the complaint are, first, which of the two buildings was covered by the policy; and second, whether defendant Princeton Risk Managers, Inc. (Princeton), who had obtained the policy, complied with its statutory notice obligation when it provided notice of the policy to the broker who had represented plaintiffs in ordering the insurance. The Law Division concluded that the policy insured against damage to the beach club, and not to the nightclub, and that Princeton had complied with its notice obligation. It therefore dismissed the complaint. We affirm.

The two businesses involved, the beach club and the nightclub, are owned by plaintiff T.W.B.C. III, Inc. (TWBC). The land and the buildings themselves are owned by plaintiff 1331 Ocean Avenue Sea Bright Associates (Ocean Avenue). In early 1991, plaintiffs retained Gilmartin & Kierstead, insurance brokers, to obtain insurance on their property. Because the property was located on the shore, placement of the insurance involved some complications and was relatively expensive. To obtain the coverage, Robert Kierstead, one of the principals of Gilmartin & Kierstead, contacted Princeton and submitted to it an application for surplus lines insurance. The nature of surplus lines insurance is to provide coverage for such difficult to insure risks which may be uninsurable through more routine channels.

Princeton is in the business of placing surplus lines insurance and is licensed to do so. When it received plaintiffs' application from Kierstead, it forwarded the application to an insurance broker in London, Thomas A. Miller & Sons (Miller), who then placed the insurance with a Lloyd's of London syndicate. On May 9, 1991, it advised Princeton that the insurance had been placed. Princeton, in turn, so advised Kierstead and also advised Kierstead of the premium amount. Kierstead accepted the proposal on behalf of TWBC and asked Princeton to bind the coverage with

Lloyd's, which Princeton did, "subject [to a] satisfactory inspection report."

That inspection report revealed there were actually two distinct buildings on the property, something which Princeton says it had not theretofore known. Upon receipt of that information, Princeton contacted Kierstead and asked which building or buildings were to be covered by the policy. In response, Kierstead FAXed its answer to Princeton:

I spoke to the owner of T.W.B.C .... today regarding your questions on value of buildings. He stated that the *entire* value should be on the main building and *not* on the nightclub. Any questions, please give me a call.

Princeton then forwarded a copy of that FAX to Miller, with the following note:

Please see attached memo from agent advising main building only insured. Night club building not to be included.

Miller acknowledged the message and told Princeton that it had also "been noted by underwriters."

When the first Lloyd's policy (which covered a one-year period) was later renewed for an additional year, the renewal application also indicated that the policy covered the beach club and not the nightclub. It described the insured premises as "beach club seasonal operation, May to September." Consistent with that designation, when a claim for property damage (unrelated to the claim in the present suit) arose in 1992, it was rejected by Lloyd's adjuster because it involved an electric service line which

provides electrical service to the neighboring night club building, which is not covered under this policy.

In December 1992 and March 1993, the nightclub building suffered substantial storm damage, and TWBC submitted a claim for that damage under its Lloyd's policy. Lloyd's rejected the claim on the grounds that its policy covered the beach club but not the nightclub. Plaintiff's complaint followed.

I

Although the policy here was not as clear as it might have been, an examination of all the written material presented by both

sides makes clear beyond question that the policy covered the beach club and not the nightclub. Those writings include both the original and the renewal application, which both refer to the beach club, as well as the rejection of the earlier claim because it involved the uncovered nightclub. And most definitive of all, they include the memorandum from plaintiffs' broker, Kierstead, which put to rest any uncertainty which might otherwise have existed, and unequivocally stated that "the entire value [of the policy] should be on the main building and not the nightclub."

Against all of that, defendants submitted only a claim that their principal does not remember telling Kierstead to place all the insurance on the beach club, and a similar claim that plaintiffs did not carefully read or understand the 1992 claim rejection letter.

In granting defendants' motion for summary judgment, the trial court complied with the directive set out in *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995), that when the evidence "is so one-sided that one party must prevail as a matter of law, the trial court should not hesitate to grant summary judgment."

Here there is no basis on which a rational fact finder could reach any conclusion other than that advanced by defendants: the policy covered damage to the beach club and not to the nightclub. Not only is the evidence "one-sided," but it is almost completely in favor of defendants with virtually nothing supporting plaintiffs. The uncorroborated testimony of plaintiffs' unexpressed intention, its protestations that it does not remember the conversation documented by its own broker, and the claim that it only superficially read the letter from the claims adjuster cannot prevail against the unequivocal contents of all the writings discussed above. The only rational conclusion is that the policy covered the beach club; it did not cover the nightclub.

II

■ Plaintiffs also claim that Princeton failed to comply with its obligation under *N.J.S.A.* 17:22–6.50. That statute requires that a "surplus lines agent" who has obtained insurance for an insured,

shall promptly issue and deliver to the insured evidence of the insurance consisting either of the policy as issued by the insurer or, if such policy is not then available, a certificate of insurance . . . or other confirmation of insurance. . . .

Here, Princeton did provide "evidence of the insurance" which it had obtained for plaintiffs. It sent that evidence to plaintiffs' broker, Gilmartin & Kierstead, who had originally been contacted by plaintiffs and who, in turn, had contacted Princeton in order to obtain the surplus lines insurance. The trial court held that Princeton's action satisfied the statute and we agree.

*N.J.S.A.* 17:22A–1 to 25 constitutes the "New Jersey Insurance Producer Licensing Act." *N.J.S.A.* 17:22A–2 contains definitions of terms used in the Act, including the critically different definitions of an "insurance agent" and an "insurance broker." According to subsection f of the statute, an insurance agent is

a person authorized, in writing, by any insurance company to act as its agent to solicit, negotiate or effect insurance contracts on its behalf or to collect insurance premiums and who may be authorized to countersign insurance policies on its behalf.

[*N.J.S.A.* 17:22A–2f.]

Subsection g of that statute defines an "insurance broker" as

a person who, for a commission, brokerage fee, or other consideration, acts or aids in any manner concerning negotiation, solicitation or effectuation of insurance contracts as the representative of an insured or proposed insured;. . .

[*N.J.S.A.* 17:22A–2g.]

An "insurance agent," then, represents an insurance company—the insurer. It acts on behalf of that company in providing insurance for some other entity. An "insurance broker," on the other hand, represents the "insured or prospective insured." A broker acts for the insured and represents the insured in obtaining insurance (from an insurance company and perhaps through an insurance agent) for the benefit of the broker's customer, who is the insured.

Here, Princeton was the "insurance agent" in the transaction and represented Lloyd's. Gilmartin & Kierstead was the "insurance broker" and represented plaintiffs in their attempt to obtain insurance. Those characterizations and differentiations are clear. They are not disputed nor are they subject to dispute.

Plaintiffs claim, however, that in providing the notice mandated by *N.J.S.A.* 17:22–6.50, Princeton could not contact the insured's broker, but had to make its contact directly with the insured—in effect, by-passing the broker. And plaintiffs claim that is so even though it was their broker who had contacted Princeton to obtain the insurance, and Princeton had all of its contacts with plaintiffs' broker and none directly with plaintiffs.

Plaintiffs submit no rational argument as to why Princeton should not have been permitted to contact Gilmartin & Kierstead, and why notice to plaintiffs' broker should not be deemed notice to plaintiffs themselves. Their argument seems premised on a claim that Gilmartin & Kierstead were in some way agents or representatives of Princeton, and that Princeton was employing Gilmartin & Kierstead as, in essence, a sub-agent for Lloyd's. There is no factual basis for that argument and it is flatly contrary to the undisputed facts of the case.

■ Plaintiffs argue that their broker—authorized to obtain insurance for them—should not be deemed authorized to then receive on their behalf confirmation of the insurance they had ordered. We can see no reason in logic or authority for such a conclusion. A principal who selects someone to act for him is generally bound by the acts of that person within the "apparent authority which he knowingly permits" the person to assume. *Mann v. Interstate Fire Cas. Co.*, 307 *N.J.Super.* 587, 595, 705 *A.*2d 360 (App.Div.1998). *See also Sears Mortgage Corp. v. Rose*, 134 *N.J.* 326, 337–38, 634 *A.*2d 74 (1993). Under that principle we can see no reason why notice to the broker chosen by plaintiffs to act for them should not be deemed notice to plaintiffs themselves.

Princeton also argues persuasively that the rule urged by plaintiffs would "create havoc in the marketplace." A clear rule which authorizes an agent representing an insurance company to communicate directly with a broker representing an insured is easy to apply and minimizes the danger of miscommunication. The agent receives its instructions from the broker and responds to that same broker. If, on the other hand, the agent receives

instructions from a broker but is then required to respond to some other entity, as plaintiffs claim the rule should be, the danger of miscommunication and misunderstanding would certainly be increased. Absent some clear affirmation by the Legislature that such a procedure is required, or some convincing argument as to why such a rule should be judicially adopted, we see no basis for requiring anything more of an agent than what Princeton did here: communicating with and providing clear confirmation to the insured's representative, its broker, Gilmartin & Kierstead. We find no violation of *N.J.S.A.* 17:22–6.50.

Affirmed.