706 A.2d 785

CATHERINE STAFFORD AND WENDELL JONES, PLAINTIFFS–RESPONDENTS, v. T.H.E INSURANCE COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT–APPELLANT,PAT'S PIZZA AND PUB, T/A THE CLUB MIRAGE, A CORPORATION OF THE STATE OF NEW JERSEY, SABO PULLELLA, T/A THE CLUB MIRAGE, AND PRINCE BAIN, DEFENDANTS–RESPONDENTS, AND ANTHONY D. PULLELLA, T/A THE CLUB MIRAGE, DON LUBIC, EUGENE LAWRENCE, T/A B. NEW YORK PRODUCTIONS, VERNON LAWRENCE, T/A B. NEW YORK PRODUCTIONS, AND ACCURATE INSURANCE AGENCY, A CORPORATION OF THE STATE OF NEW JERSEY, JOINTLY, SEPARATELY OR IN THE ALTERNATIVE, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 10, 1998—Decided March 5, 1998.

Before Judges LONG, STERN and KLEINER.

*Steven J. Polansky,* argued the cause for appellant T.H.E. Insurance Company (*Spector, Gadon & Rosen,* attorneys; *Mr. Polansky,* on the brief).

*Scott E. Becker,* argued the cause for respondents Pat's Pizza & Pub, t/a the Club Mirage, and Sabo Pullella, t/a the Club Mirage (*Mr. Becker,* on the brief).

*Edward R. Doughty,* argued for the cause for respondents Catherine Stafford and Wendell Jones (*Mr. Doughty,* on the brief).

*Mark A. DeMarco,* argued the cause for respondent Prince Bain (*Mr. DeMarco,* on the brief).

The opinion of the court was delivered by

LONG, P.J.A.D.

On November 11, 1994, plaintiffs Catherine Stafford, Wendell

Jones and Prince Bain [1] were patrons at a nightclub known as Club Mirage located in Atlantic City, New Jersey. At approximately 2:00 a.m. gunfire erupted in Club Mirage and all three patrons were shot. The shots were fired by other patrons and not by Club Mirage employees. Defendants, Pat's Pizza & Pub, Inc., Sabo Pullella and Anthony D. Pullella are the owners of the nightclub.

At the time of this incident, Club Mirage was covered by a commercial general liability policy (the "Policy") issued by T.H.E. Insurance Company. The first page of the Policy states:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

The Policy also provides coverage for bodily injury and property damage. Bodily injury is defined as "bodily injury, sickness or disease sustained by a person, including death...." In an endorsement, injury resulting from assault and battery is specifically excluded. The exclusion states in full:

> In consideration of the premium charged, it is agreed that NO coverage of any kind (including but not limited to cost of defense) is provided by this policy for Bodily Injury and/or Property Damage arising out of or caused in whole or in part by an assault and/or battery. Further, NO coverage is provided if the underlying operative facts constitute an assault and/or battery irrespective of whether the claim alleges negligent hiring, supervision and/or retention against the insured or any other negligent action.
>
> This endorsement supplements any other provision(s) of the policy to the extent it is not inconsistent therewith. In the event this endorsement is deemed inconsistent with any other provision of the policy, then this endorsement overrides and replaces that provision.

On November 28, 1994, Club Mirage was advised of Stafford's claim. On December 21, 1994, All Risk Claims Services, Inc., on behalf of T.H.E. Insurance Company, acknowledged notice of Stafford's claim to its insured, Club Mirage and subsequently forwarded a reservation of rights letter to Club Mirage. A claims adjuster advised Stafford that she was handling the case. Stafford thus forwarded medical bills and other documentation.

---

[1] Bain is actually a defendant in this action but a plaintiff in the underlying action.

All three patrons subsequently filed complaints asserting various causes of action including inadequate security; negligent hiring, training and supervision of employees; implied warranty and public nuisance.

T.H.E. Insurance Company disclaimed coverage and on March 18, 1996, Stafford (later joined by Jones) filed the instant declaratory judgment action, seeking a determination that the assault and battery exclusion in the insurance policy did not apply and that T.H.E. Insurance Company was required to defend and indemnify the insured. T.H.E. Insurance Company answered, denying the allegations and asserting various defenses. The three underlying cases were stayed pending conclusion of the declaratory judgment action.

In October 1996, Stafford, Jones and Bain filed motions for partial summary judgment against T.H.E. Insurance Company seeking to compel it to defend and indemnify Club Mirage. T.H.E. Insurance Company, in turn, filed a motion for summary judgment on the coverage issues seeking a determination that its exclusion provision was applicable, and accordingly, it had no duty to defend and indemnify.

The motion judge declared the assault and battery exclusion in the T.H.E. Insurance Policy to be ambiguous:

> In my opinion, had the paragraph, had the ... exclusion stopped after the first question, I'm sorry, after the first sentence, in my opinion, that would exclude this claim from coverage. But for whatever reason the drafter of this provision added a second sentence. And the second sentence speaks in terms of acts which could only be acts of employees or could only pertain to employees, I guess I should say.
>
> As counsel had pointed out ... in the briefs, you can't hire a patron. I guess you can supervise a patron when a patron's inside the premises, you can't retain a patron. Well, I suppose you could give a patron ... a nice time so the patron comes back again, ... if that's retention, then I suppose you could retain a patron in that sense, but ... in my view, the language of the second sentence here refers to employees.
>
> Now, I know perfectly well that ... a problem area ... with a bar and those carriers that write insurance policies with respect to those bars is the action of the, in a vernacular, the bouncers of the bars. Bouncers, by their very nature, tend to be large young men ... who are not afraid to ... use their physicality to impose their will upon patrons. they're not afraid to beat people up, is what I mean.

There's lots of ... lawsuits where a patron claims that a bouncer has roughed him up or ... beaten him or otherwise injured the ... patron, and I can understand why an insurance company would not want to make itself responsible when a bouncer gets out of hand and injures ... a patron.

It's difficult when the allegations of such claims are that, well ... because a plaintiff ... has to phrase it carefully in order so ... that it's not an intentional act, and therefore, excluded by, ... because of it's ... intentional nature. He has to phrase it in terms of negligence, well, the bouncer negligently hit my client or negligently ... there's ... an unintentional ... a negligent and unintentional result that came about because of an intentional act, or things of that nature.

So, certainly an insurer has an interest in excluding from coverage injuries that are claimed to have ... resulted from assaults and batteries. And there's nothing wrong with that. Our ... cases say they can do that. I think here, though, that the inclusion of this second paragraph makes this exclusion ambiguous as to whether or not it's ... intended to cover anybody or just employees.

The language that I see in the *Terranova* case that Mr. Marconi was kind enough to supply for us here today seems pretty clear, and although ... Mr. Doughty may have tried to think of some way to ... divine coverage out of that, he really would have had a difficult time doing it because it very clearly says that ... any assault and battery, no matter how it comes about, is excluded. And you could use language like that.

I don't subscribe to the proposition that there are magic words that have to be used. You don't have to say the word patron in order to exclude the assault ... and ... battery by a patron. But this exclusion, as I said before, in my opinion, is ambiguous because the second sentence could be read reasonably ... could be read as modifying or limiting the action or the ... extent of the first sentence, in that it's ... pretty clear that the people whose actions are being talked about in the second sentence are employees or pretty clearly are employees.

So, if I conclude ... that the exclusion is ambiguous, and ... I, therefore, conclude that it does not cover assaults and batteries by third parties, such as the unknown assailants who fired the guns who injured the claimants in this case. I, therefore, grant the motion by plaintiffs Stafford and Jones, defendant in this action, plaintiff in another action, Bain, and I deny the motion for summary judgment by T.H.E. Insurance Company.

He also rejected plaintiffs' estoppel argument concluding that T.H.E. Insurance Company's reservation of rights letter was sent within a reasonable period of time and that, despite the forwarding of bills and other documentation by plaintiffs, there was no reliance to their detriment on coverage. He ultimately entered orders in favor of Stafford, Jones and Bain directing T.H.E. Insurance Company to defend and indemnify Club Mirage. He denied T.H.E. Insurance Company's summary judgment motion. T.H.E. Insurance Company now appeals.

An insurer's "duty to defend comes into being when the complaint states a claim constituting a risk insured against." *Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 173, 607 *A.*2d 1255 (1992) (quoting *Danek v. Hommer*, 28 *N.J.Super.* 68, 77, 100 *A.*2d 198 (App.Div.1953), *aff'd o.b.*, 15 *N.J.* 573, 105 *A.*2d 677 (1954)). When the allegations in the complaint and the language in the policy are compared, and when they correspond, there is a duty to defend, regardless of the merits of the claims. *Ibid.* Further, the duty to defend clause is enforceable if there is a "potentially-coverable occurrence" that would be indemnified if proved valid. *Id.* at 180, 607 *A.*2d 1255. However, if the insurer claims that the conduct in question falls within an exclusion contained in the policy, then it is the insurer who bears the burden of proving that issue. *Sinopoli v. North River Ins. Co.*, 244 *N.J.Super.* 245, 251, 581 *A.*2d 1368 (App.Div.1990), *certif. denied*, 127 *N.J.* 325, 604 *A.*2d 600 (1991); *Aetna Ins. Co. v. Weiss*, 174 *N.J.Super.* 292, 296, 416 *A.*2d 426 (App.Div.), *certif. denied*, 85 *N.J.* 127, 425 *A.*2d 284 (1980).

Moreover, a policy of insurance will be enforced, as written, when the terms are clear, in order that the parties' expectations are fulfilled. *Kampf v. Franklin Life Ins. Co.*, 33 *N.J.* 36, 43, 161 *A.*2d 717 (1960); *Scarfi v. Aetna Cas. & Sur. Co.*, 233 *N.J.Super.* 509, 514, 559 *A.*2d 459 (App.Div.1989). When the meaning of a provision is ambiguous, however, the ambiguity is construed in favor of the insured and against the insurer. *Doto v. Russo*, 140 *N.J.* 544, 556, 659 *A.*2d 1371 (1995); *Schmidt v. Smith*, 294 *N.J.Super.* 569, 582, 684 *A.*2d 66 (App.Div.1996), *certif. granted*, 148 *N.J.* 461, 690 *A.*2d 608 (1997). While coverage provisions are given a broad interpretation by the courts, a strict interpretation is required when there is an exclusion clause which is also strictly construed against the insurer. *Schmidt, supra*, 294 *N.J.Super.* at 582, 684 *A.*2d 66; *Aetna Ins. Co., supra*, 174 *N.J.Super.* at 296, 416 *A.*2d 426. Despite this, the court should not ignore the clear meaning and intent of exclusion provisions. *Scarfi, supra*, 233 *N.J.Super.* at 514, 559 *A.*2d 459.

The issue on appeal is relatively straight-forward—is the assault and battery exclusion in T.H.E. Insurance Company Policy ambiguous? As might be expected, T.H.E. Insurance Company argues the exclusion in the Policy is "clear, concise and unambiguous" and unequivocally excludes any claim in which "the underlying operative facts could constitute an assault and/or battery" regardless of the theory of liability advanced. Stafford, Jones, Bain, Pat's Pizza & Pub and Sabo Pullella counter that the trial judge properly found the exclusion to be ambiguous and thus the provision only excludes assaults and batteries by employees. They argue that, although the first sentence of the exclusion, standing alone, covers all assaults and batteries, the second sentence is a "negation or qualification" and limits the exclusion to assaults and batteries perpetrated by employees; that the second sentence would be mere surplusage if it did not limit the first; and that the words "any other negligent action" should be read under the doctrines of ejusdem generis and noscitur a sociis to mean other actions against employees.

There appears to be no reported case in this State interpreting the policy language here involved; none has been brought to our attention and our own research has not disclosed any. Counsel have cited many out of state and federal decisions with exclusions, none of which contain a provision identical to the instant provision. These citations do not aid in resolving this matter.

We thus return to the Policy itself which provides coverage for bodily injury and property damage. The Policy excludes coverage for bodily injury or property damage arising from an assault and battery:

> In consideration of the premium charged, it is agreed that NO coverage of any kind (including but not limited to cost of defense) is provided by this policy for Bodily Injury and/or Property Damage arising out of or caused in whole or in part by an assault and/or battery. Further, NO coverage is provided if the underlying operative facts constitute an assault and/or battery irrespective of whether the claim alleges negligent hiring, supervision and/or retention against the insured or any other negligent action.

Contrary to the trial judge, we see no ambiguity whatsoever in the terms of the exclusion. Its language plainly indicates to the

average reader that, no matter who commits the assault and battery, no coverage will be provided. The first sentence clearly excludes coverage for bodily injury or property damage "arising out of or caused in whole or in part" by an assault or battery. The second sentence does not limit the first sentence. Rather, the use of the word "further" in the second sentence (which means "in addition: moreover," "going or extending beyond what exists: additionally," *Webster's Third New International Dictionary* 924 (1971)) reminds the reader that the focus is on the nature of the injury alleged and not on a plaintiff's theory of liability. That the second sentence is not mere surplusage is underscored by its contrapuntal use of the words "operative facts" and "claim." Regardless of how a "claim" is framed, if the "operative facts" constitute an assault and battery, the exclusion applies. Thus, by way of example, the second sentence refers to "negligent hiring, supervision and/or retention" which are obvious refuges for a plaintiff seeking to avoid the assault and battery exclusion. *See, e.g., Robert W. Hayman, Inc. v. Acme Carriers, Inc.,* 303 *N.J.Super.* 355, 356–57, 696 *A.*2d 1125 (App.Div.1997) (finding provision in insurance policy which excluded any fraudulent, dishonest or criminal acts committed by the insured or its employees unambiguously excluded plaintiff's claim of negligent supervision). However, the sentence goes on to include "*any* other negligent action" thus placing the insured on notice that it is the facts of the case and not the craft of the plaintiff's lawyer which will determine the applicability of the exclusion.

We recognize that if there is a second fair interpretation of an exclusion available to an injured plaintiff, the insurance policy will be construed for coverage against the insurer. *Butler v. Bonner & Barnewall, Inc.,* 56 *N.J.* 567, 576, 267 *A.*2d 527 (1970); *Sinopoli, supra,* 244 *N.J.Super.* at 251, 581 *A.*2d 1368; *Aetna Ins. Co., supra,* 174 *N.J.Super.* at 296, 416 *A.*2d 426. This does not mean however that any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage. In sum, we are satisfied that the motion judge erred in declaring the assault and battery exclusion in the Policy ambiguous.

Although there was no cross-appeal by plaintiffs from the denial of their estoppel claim, we have nonetheless reviewed it and have concluded that the motion judge properly rejected it based on the evidence presented. *R.* 2:11–3(e)(1)(A).

We thus reverse the grant of summary judgment to plaintiffs and remand the matter to the motion judge for the entry of summary judgment in favor of the T.H.E. Insurance Company.