**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1237-14T3

ESSEX INSURANCE COMPANY,

    Plaintiff,

v.

NEW JERSEY PAN-AFRICAN CHAMBER
OF COMMERCE & INDUSTRY, INC.;
VACCARO ASSOCIATES, LLC; HAROLD
BERLOW, individually and in his
official capacity as owner of
700 BANGS AVENUE LLC; 700 BANGS
AVENUE LLC; MLB CONSTRUCTION AND
CONSULTING, INC.; FRENCH &
PARRELLO ASSOCIATES, P.A.; GRAY,
WATT & PARTNERS; COLLECTIVE
CONCRETE, INC.; ATLANTIC SHEET PILE,
INC., NOREAST, INC.; STEVEN A. TARDY,
individually and in his official
capacity as agent/employee of FRENCH
& PARRELLO ASSOCIATES, P.A.; JAMES
WATT, individually and in his
official capacity as agent/employee
of GRAY, WATT & PARTNERS; DAVID
ZOLTAK, individually and in his
official capacity as agent/employee
of NOREAST, INC; MELBER GEOVANNY
TINITANA; WORK ARCHITECTURE AND
DESIGNS, INC.; CONCRETE CONSTRUCTION
AND COUNSELING, INC.; APPLEGATE
ENGINEERING SERVICE, INC.; and
CERTIFIED TESTING AND INSPECTIONS,
INC.,

    Defendants,

and

NAVIGATORS SPECIALTY INSURANCE
COMPANY,

    Defendant/Third-Party Plaintiff-
    Respondent/Cross-Appellant,

v.

SCOTTSDALE INSURANCE COMPANY,

    Third-Party Defendant-Appellant/
    Cross-Respondent.

_____

> Argued March 6, 2017 — Decided September 14, 2017
>
> Before Judges Sabatino, Nugent, and Haas.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2320-08.
>
> Gary S. Kull argued the cause for appellant/cross-respondent (Carroll, McNulty & Kull LLC, attorneys; Mr. Kull and Blake Palmer, of counsel and on the brief).
>
> Michael A. Gorokhovich argued the cause for respondent/cross-appellant (Gorokhovich Insurance & Commercial Litigation LLC, attorneys; Mr. Gorokhovich, of counsel and on the brief).

PER CURIAM

    This is a declaratory judgment action to determine insurance coverage for a property damage claim and a personal injury claim, both of which accrued when a building collapsed. The plaintiffs in those actions alleged construction activity on adjacent land

caused the collapse. On this appeal, Scottsdale Insurance Company, the insurer of a subcontractor who drove piling at the construction site, appeals from three orders that, collectively, required Scottsdale to reimburse defense costs to Navigators Specialty Insurance Company, the insurer of the general contractor at the construction site. In issuing its orders, the court rejected, among other Scottsdale arguments, that a "Subsidence Exclusion" in its policy excluded coverage. We find the subsidence exclusion clause unambiguous and applicable. We thus reverse the summary judgment order.

The material facts are undisputed. Construction was underway on 700 Bangs Avenue, LLC's Asbury Park property, which was adjacent to New Jersey Pan-African Chamber of Commerce & Industry, Inc.'s building, the building that partially collapsed during the construction. 700 Bangs had contracted with a general contractor insured by Navigators to build a condominium complex. The general contractor sub-contracted the timber and sheet metal pile work to a pile company insured by Scottsdale. As required by the sub-contract, the pile company and Scottsdale named the general contractor as an additional insured on Scottsdale's Commercial General Liability policy.

During construction - after the pile subcontractor had driven timber and sheet pile with a pile driving machine but before the

subcontractor had removed certain sheet piles – the Pan-African building partially collapsed, injuring a construction worker. As a result of the collapse, the Pan-African building had to be demolished. The Pan-African Chamber of Commerce commenced a property damage action and the construction worker commenced a personal injury action.

The plaintiff in this declaratory judgment action, Essex Insurance Company, had issued a commercial general liability policy to 700 Bangs. Essex filed this action seeking an order declaring it owed no obligation to defend or indemnify, among others, the general contractor. Essex also sought a declaration that the general contractor's insurance company, Navigators, was obligated to defend and indemnify 700 Bangs. Navigators filed a third-party complaint against Scottsdale, alleging, among other things, that Scottsdale was obligated to provide a defense to the general contractor.

Essex successfully moved for summary judgment.[1] On cross-motions for summary judgment filed by Navigators and Scottsdale, the trial court entered an order of partial summary judgment for Navigators, declaring that Scottsdale had a duty to defend the

---

[1] We affirmed the trial court's grant of summary judgment to Essex. Essex Ins. Co. v. New Jersey Pan-African Chamber of Commerce & Indus., No. A-1178-11 (App. Div. Aug. 27, 2013).

general contractor in the underlying property damage and personal injury actions. In doing so, the court rejected Scottsdale's argument that its policy's subsidence exclusion excluded coverage. The trial court denied Scottsdale's motion for reconsideration and later entered an order requiring Scottsdale to reimburse Navigators $210,021.49, the cost of Navigators' defense of its insured, the general contractor. The court denied Navigators' application for fees. Scottsdale filed an appeal and Navigators filed a cross appeal.

Scottsdale raises five arguments on appeal: its policy's subsidence clause excluded coverage; coverage under its additional insured endorsement was limited to the general contractor's vicarious liability; the additional insured endorsement naming the general contractor did not become effective until after the acts for which Scottsdale's insured, the pile subcontractor, were allegedly liable; the general contractor did not qualify as an additional insured under the Scottsdale policy; and the Scottsdale policy's residential exclusion precluded coverage. Navigators contests these arguments in its cross-appeal, alternatively argues the Scottsdale policy should be reformed to void its residential exclusion, and also argues the trial court erroneously denied its fee application.

 A-1237-14T3

We review a trial court's order granting summary judgment de novo, applying the same standard the trial court applies, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Mindful of this standard, we first address whether Scottsdale had a duty to defend the general contractor in light of its policy's subsidence exclusion. The exclusion states:

> This policy does not apply to "bodily injury" or "property damage" caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of landslide, mudflow, earth sinking or shifting, resulting from operations of the named insured or any subcontractor of the named insured.

In rejecting Scottsdale's contention the subsidence clause excluded coverage, the trial court acknowledged the exclusion was presumptively valid. The court noted, however, the complaints in the underlying actions alleged the subcontractor's conduct caused vibrations and erosions to the surrounding land. The court reasoned that for the exclusion to apply, Scottsdale was required to prove "that the subsidence was caused by an earth movement, which includes earth rising, sinking, shifting, or subsiding, landslide, or mudflow." Thus, the court framed the issue as "whether vibrations caused by [the pile subcontractor's] operation caused one of these specific events." The court concluded, "[r]easonable minds can disagree as to whether vibrations mean

earth shifting or sinking. The policy does not provide for a definition of earth shifting. Additionally, the policy does not negate coverage for all 'earth movements,' which would have encompassed vibrations."

Denying Scottsdale's motion for reconsideration, the court reiterated that "[w]hether vibrations can be considered a type of earth shifting is a matter of contention. Thus, the subsidence exclusion is an ambiguous one and Scottsdale is not entitled to reconsideration on this issue."

Scottsdale contends the trial court erred when it determined "Scottsdale must prove that the subsidence was caused by an earth movement. . . ." Scottsdale asserts it was instead required "merely [to] show that the allegations of the [u]nderlying [a]ctions fall within the language of the exclusion." According to Scottsdale, the allegations in the underlying actions' complaints fall squarely within its policy's subsidence exclusion, which was unambiguous.

Navigators contends the trial court correctly concluded the Scottsdale policy's subsidence exclusion is ambiguous. According to Navigators, because the clause consists of "four sub-clauses strung together by [three] causal relationships in reverse order, where the first listed causal relationship is broader than the two

subsequent causal links which require only a 'resulting from' relationship," the clause is hopelessly obtuse.

Navigators and Scottsdale dispute whether Scottsdale owed Navigator's insured and Scottsdale's additional insured — the general contractor — a duty to defend. "The duty to defend comes into being when the complaint states a claim constituting a risk insured against." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992) (quoting Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), aff'd o.b., 15 N.J. 573 (1954)). Thus, a court determines "[w]hether an insurer has a duty to defend . . . by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." Ibid.

Here, Scottsdale contends the property damage and personal injury complaints did not state a claim against a risk it insured because the claim fell within its policy's subsidence exclusion. Exclusions in insurance policies are presumptively valid and enforceable "if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). In contrast, courts will find "a genuine ambiguity to arise where the phrasing of the policy is so confusing

8

that the average policyholder cannot make out the boundaries of coverage." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979).

Generally, exclusions are narrowly construed. Flomerfelt, supra, 202 N.J. at 442. The insurer has the burden of bringing the case within the exclusion. Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998). Courts must be careful, however, "not to disregard the 'clear import and intent' of a policy's exclusion." Flomerfelt, supra, 202 N.J. at 442 (quoting Westchester Fire Ins. Co. v. Cont'l Ins. Cos., 126 N.J. Super. 29, 41 (App. Div. 1973), aff'd o.b., 65 N.J. 152 (1974)). Far-fetched interpretations of a policy exclusion are insufficient to create an ambiguity requiring coverage. Stafford v. T.H.E. Ins. Co., 309 N.J. Super. 97, 105 (App. Div. 1998).

Whether the terms of an insurance contract are "clear or ambiguous is . . . a question of law." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 282 (D.N.J. 1992), aff'd, 993 F.2d 877 (3d Cir. 1993)). For that reason, we owe no deference to the trial court's decision about the issue. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In the case before us, the complaints' allegations fall within the Scottsdale policy's subsidence exclusion. The first amended property damage complaint — included in the summary judgment record

— alleges during the excavation and construction of the footing and foundation for 700 Bangs' new building, various entities affiliated with the construction, among other activities, used "heavy machine operation, like a pile driver or backhoe, upon or near [Pan-African's] building." The complaint alleges defendants - including Scottsdale's insured, the pile subcontractor - after removing soil from excavated portions of their property, "did force and drive into the bottom of the excavation timber pile piers and at points along their east, north and west boundary lines certain matched heavy steel sheet piling, which pilings defendants proceeded to drive, by means of a heavy machine similar to a piledriver, into the bottom of the excavation."

The complaint further alleges "[t]hese operations did jar and cause the surrounding land to vibrate, which caused the soil underlying the foundation of [the Pan-African] building to erode and subside down into the excavation. The strong vibrations, under and against [the Pan-African] building caused the building to shake, the exterior walls to crack and the roof to become uneven." The complaint attributes the building's collapse to these and other construction activities on 700 Bangs' land.

The second amended personal injury complaint alleges the "wall collapse and resultant personal injuries were caused" by, among other acts and omissions, defendants "forc[ing] and

[driving] timber pile piers and heavy steel sheet piling by means of a heavy machine which caused the faring vibrations and erosion to the surrounding land and its foundation of the [Pan—African] building."

These complaints allege the pile-driving activity caused vibrations which in turn caused the soil beneath the Pan-African building's foundations to "erode and subside down into the excavation"; and caused "erosion to the surrounding land." The allegations fall within the clear import and intent of the Scottsdale policy's exclusion for subsidence of land caused by earth sinking or shifting, resulting from operations of the pile subcontractor. Flomerfelt, supra, 202 N.J. at 441.

Although we do not necessarily disagree with the trial court's observation that "[r]easonable minds can disagree as to whether vibrations mean earth shifting or sinking," that statement is incomplete. The property damage and personal injury complaints did not merely allege vibrating sand or soil beneath the Pan-African building's foundation caused the collapse. Rather, they allege the vibrations generated by construction activity caused the sand or soil to "erode and subside down into the excavation." The earth's erosion and subsiding down into the excavation constituted earth "sinking or shifting" and thus fell within the policy's exclusion.

Navigators' lengthy argument to the contrary, with its multiple charts, is the kind of strained interpretation that overlooks the exclusion's clear import and intent. As we have previously held, such interpretations are "[in]sufficient to create an ambiguity requiring coverage." Stafford, supra, 309 N.J. Super. at 105.

Moreover, this is not a situation where "the entangled and professional interpretation of an insurance underwriter is pitted against that of an average purchaser of insurance." DiOrio v. New Jersey Manufacturers Ins. Co., 79 N.J. 257, 270 (1979). To the contrary, Navigators is itself an insurer that issues policies consisting of multiple coverage clauses and exclusions, as evidenced by the commercial general liability policy it issued to the general contractor in this case. We are confident Navigators had little difficulty understanding the import and intent of the Scottsdale policy's subsidence exclusion.

In view of our disposition of the parties' dispute concerning the subsidence exclusion, we need not address Scottsdale's remaining arguments or the arguments on Navigators' cross appeal. We reverse the orders resulting in the grant of summary judgment to Navigators and remand for the entry of an order of summary judgment in favor of Scottsdale.

Reversed and remanded. We do not retain jurisdiction.

A-1237-14T3

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION