**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2056-17T3

C.M.S. INVESTMENT VENTURES,
INC., and ROBERT W. MCCOY,

      Plaintiffs-Respondents/
Cross-Appellants,

v.

AMERICAN EUROPEAN
INSURANCE COMPANY,

      Defendant-Appellant/
Cross-Respondent,

and

ZEV NADLER, FRED KATZ
AGENCY, INC., and A.G.,

      Defendants-Respondents.

_____

Argued February 7, 2019 – Decided May 28, 2019

Before Judges O'Connor, Whipple and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1893-16.

Steven Verveniotis (Miranda Slone Sklarin Verveniotis, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellant/cross-respondent (Miranda Slone Sklarin Verveniotis, attorneys; Michael A. Miranda, Steven Verveniotis, and Justin A. Goldberg, on the briefs).

Gregory E. Riley argued the cause for respondents/cross-appellants.

Eric S. Schlesinger argued the cause for respondents (Golden Rothschild Spagnola Lundell Boylan & Garubo, PC, attorneys; Eric S. Schlesinger and Joseph C. Valenzuela, of counsel and on the brief).

PER CURIAM

Defendant American European Insurance Company (AEIC) appeals from orders entered on August 18, 2017, and December 1, 2017, respectively. Plaintiff C.M.S. Investment Ventures, Inc. (CMS) was granted a declaratory judgment ordering AEIC to defend and indemnify CMS, as well as pay CMS's attorney's fees. CMS filed a protective cross-appeal from an October 13, 2017 order granting summary judgment in favor of CMS's insurance broker, defendants Zev Nadler and Fred Katz Agency, Inc. We affirm the trial court on the coverage question and its award of attorney's fees, and, as a result, need not reach the merits of CMS's protective appeal.

CMS was the owner of an apartment building in Irvington, and plaintiff Robert McCoy and his son were its principals. A.G. resided in a ground-floor

unit.  A.G. had complained to CMS management that a window in her unit was in disrepair and failed to lock properly.  There were no bars installed over the window.  CMS allegedly failed to respond to A.G.'s concerns.  On March 29, 2013, an intruder broke into A.G.'s apartment through the window and sexually assaulted her.  A.G. asserted a premises liability claim against CMS.  She alleged CMS breached a duty of care to her by failing to adequately maintain the property, by failing to keep the premises safe, and by not taking precautions to protect tenants from reasonably foreseeable criminal activity.

CMS was insured by AEIC.  CMS's policy contained a commercial general liability coverage form, as well as several endorsements.  One such endorsement was an assault and battery exclusion, stating:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
>
> ASSAULT AND BATTERY EXCLUSION
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
>
> We will not provide any coverage under this policy for any claim, demand or suit based on Assault and Battery, or out of any act, actual or alleged, or omission in connection with the prevention or suppression of such

3

acts, whether caused by or at the instigation or direction of any "insured", their employees, patrons or any other person or entity.

All claims, accusations or charges of negligent hiring, placement, training, management or supervision arising from actual or alleged assault or battery are also not covered and will have no duty to defend any "insured" person or entity from such claims, accusations and charges.

In addition:

1. Exclusion

a. Under paragraph 2., Exclusions of Coverage A – Bodily Injury and Property Damage Liability (Section I – Coverages) of your Commercial General Liability Coverage Form is replaced by the following:

This insurance does not apply to:

Expected or intended injury - "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

2. Exclusion

a. Under paragraph 2., Exclusions (Section I – Liquor Liability Coverage) of your Liquor Liability Coverage Form is replaced by the following:

This insurance does not apply to:

Expected or intended injury - "Injury" expected or intended from the standpoint of the insured.

4

All other terms and conditions of your policy remain unchanged.

On May 10, 2013, McCoy, through CMS's insurance broker, Zev Nadler and Fred Katz Agency, Inc., submitted a general liability loss notice to AEIC seeking coverage for A.G.'s claim. AEIC opened a claim and assigned the case to a senior liability casualty adjuster. McCoy spoke with the adjuster and assumed AEIC would handle the claim.

On May 28, 2013, and November 13, 2013, the adjuster sent letters to A.G.'s attorney seeking information about the break-in and sexual assault. A.G.'s attorney did not respond to either letter but instead, on February 5, 2014, requested AEIC reimburse A.G. for medical payments. The adjuster denied coverage and invoked an exclusion under CMS's policy for medical payments incurred as a result of an injury sustained on a normally occupied premises. On March 19, 2014, the adjuster closed the file but neglected to inform McCoy.

On January 1, 2015, McCoy and his son sold CMS to an investor. The contract for sale contained no reference to A.G.'s claim because McCoy thought the claim was resolved.

On January 25, 2015, A.G.'s attorney wrote to AEIC to initiate a claim under CMS's policy. McCoy was served with A.G.'s complaint on April 3, 2015, and, on April 6, 2015, AEIC sent a letter to CMS disclaiming coverage. AEIC

5

characterized A.G.'s lawsuit as an allegation of assault and battery and utilized the assault and battery exclusion to deny coverage.

On March 11, 2016, CMS filed a complaint seeking a declaratory judgment against AEIC for defense and indemnification. CMS moved for summary judgment and argued the assault and battery exclusion was ambiguous and AEIC should be estopped from denying coverage. The trial judge agreed with CMS on both questions. In a written opinion issued on August 18, 2017, the trial judge explained the phrase "based on assault and battery" was ambiguous and capable of limitless meaning. Moreover, the clause appeared under the heading "Liquor Liability Coverage Part," even though the policy insured a residential building where no alcohol was served. Alternatively, even if the exclusion was not ambiguous, AEIC was still obligated to cover CMS because A.G.'s claim sounded in negligence, not assault and battery. The judge

A-2056-17T3

also found AEIC was estopped from denying coverage, because it waited twenty months to inform CMS of its coverage decision.[1]  This appeal followed.[2]

## I.

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court."  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  R. 4:46-2(c).  We "view the evidence in the light most favorable to the non-moving party[.]"  Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012).

---

[1]  CMS also sued Zev Nadler and Fred Katz Agency, Inc. for negligently procuring an inadequate insurance policy.  On October 13, 2017, the trial court entered summary judgment in favor of the insurance broker.  CMS filed a protective appeal of the October 13, 2017 order to be addressed in the event we reversed the trial court's order requiring coverage.  As explained below, because we affirm the trial court's order requiring coverage, we need not address the October 13, 2017 order.

[2]  Several weeks before oral argument in this matter, AEIC settled with A.G.  On January 28, 2019, CMS moved to dismiss AEIC's appeal as moot.  We denied the motion on February 5, 2019.  As we are affirming the trial court's order requiring AEIC to provide coverage, it is unnecessary to address CMS's argument that AEIC's appeal is moot.

A-2056-17T3

"Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alterations in original) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995)).

"We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594 (2001). "[W]e first examine the plain language of the policy and, if the terms are clear, they 'are to be given their plain, ordinary meaning.'" Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (quoting Zacarias, 168 N.J. at 595). "If the language is clear, that is the end of the inquiry." Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 207 (2017) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). We refrain from "writing a better insurance policy than the one purchased." President v. Jenkins, 180 N.J. 550, 562 (2004). "But where an ambiguity arises, we interpret the policy in favor of the insured and against the insurer." Katchen v. Gov't Emps. Ins. Co., 457 N.J. Super. 600, 605 (App. Div. 2019).

"[A]n insurer's duty to defend an action against the insured is measured by the allegations contained in the complainant's pleadings." Voorhees v. Preferred Mut. Ins. Co., 246 N.J. Super. 564, 569 (App. Div. 1991). "As a practical matter, the determination of an insurer's duty to defend requires review of the complaint with liberality to ascertain whether the insurer will be obligated to indemnify the insured 'if the allegations are sustained.'" Abouzaid v. Mansard Gardens Assocs., LLC, 207 N.J. 67, 79 (2011) (quoting Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953)). "[T]he complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured." Danek, 28 N.J. Super. at 77. "[I]t is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." Flomerfelt v. Cardiello, 202 N.J. 432, 444 (2010).

Turning to the exclusion at issue, the key phrase in need of interpretation is "any claim, demand or suit based on Assault or Battery[.]" (Emphasis added). The trial court concluded the use of "based on" as a modifier of "Assault and

Battery" was subject to a "limitless" number of interpretations such that the clause was ambiguous.

In other cases, assault and battery exclusions have used the phrase "arising out of," i.e., "NO coverage of any kind . . . is provided by this policy for Bodily Injury and/or Property Damage arising out of or caused in whole or in part by an assault and/or battery." Stafford v. T.H.E. Ins. Co., 309 N.J. Super. 97, 100 (App. Div. 1998) (emphasis added). Our Supreme Court interpreted "arising out of" to mean "originating from," "growing out of" "or having a substantial nexus [to]." Flomerfelt, 202 N.J. at 454 (quotation omitted). "Whether used to define or exclude coverage, the phrase 'arising out of' is given a broad definition." L.C.S., Inc. v. Lexington Ins. Co., 371 N.J. Super. 482, 493 (App. Div. 2004).

Here, the term "based" is a transitive verb meaning to "make," "form" or "serve" as the foundation of "any claim, demand or suit[.]" Webster's New College Dictionary 92 (2d ed. 1999). Use of the preposition "on" followed by "Assault and Battery" puts a limit on possible claims, demands or suits subject to the exclusion. Read together, the exclusion applies to claims, demands or suits where "Assault and Battery" forms or serves as the claim's foundation.

Flomerfelt and L.C.S. suggest an injury can have several proximate causes, and when one cause is excluded under the policy, it does not necessarily

A-2056-17T3

mean all causes of the injury are excluded. <u>Flomerfelt</u>, 202 N.J. at 454 ("Each of those potential definitions [of 'arising out of'] includes a causal link between the excluded act and the injury, but none requires that the excluded act be the proximate cause of the injury."); <u>L.C.S.</u>, 371 N.J. Super. at 494 (permitting a negligent hiring claim in light of an assault and battery exclusion because the plaintiff's injuries were, in part, caused by a "negligent act unrelated to the assault and battery"); <u>cf.</u> <u>Sealed Air Corp. v. Royal Indem. Co.</u>, 404 N.J. Super. 363, 380 (2008) (pollution exclusion was inapplicable because the cause of action was "based on" securities fraud, not pollution). <u>But see</u> <u>Stafford</u>, 309 N.J. Super. at 104-05 (use of "arising out of or caused in whole or in part by an assault and/or battery" increases the type of claims subject to the exclusion). If A.G.'s claim were based <u>only</u> on the sexual assault, the exclusion would apply; however, A.G. sued CMS under a premises liability theory alleging CMS's negligent maintenance of the property caused her injury. New Jersey courts have held landlords responsible "for creating an unreasonably enhanced risk of loss resulting from foreseeable criminal conduct." <u>Trentacost v. Brussel</u>, 82 N.J. 214, 222 (1980) (quotation omitted). Thus, A.G.'s claim sounds in negligence, not an intentional tort, and should have been covered by AEIC.

11

We also agree with the trial judge that AEIC was estopped from disclaiming coverage. "Upon the receipt from its insured of a claim or notification of an incident that may give rise to a claim, an insurer is entitled to a reasonable period of time in which to investigate whether the particular incident involves a risk covered by the terms of the policy." Griggs v. Bertram, 88 N.J. 347, 357 (1982). "Under certain circumstances an insurance carrier may be estopped from asserting the inapplicability of insurance to a particular claim against its insured despite a clear contractual provision excluding the claim from the coverage of the policy." Id. at 355-56. "[O]nce an insurer has had a reasonable opportunity to investigate, or has learned of grounds for questioning coverage, it then is under a duty [to] promptly [] inform its insured of its intention to disclaim coverage or of the possibility that coverage will be denied or questioned." Id. at 357. "[E]ven an insurer which does not acknowledge coverage may be estopped by an '[u]nreasonable delay in disclaiming coverage, or in giving notice of the possibility of such a disclaimer.'" Barrett v. N.J. Mfrs. Ins. Co., 295 N.J. Super. 613, 618 (App. Div. 1996) (quoting Griggs, 88 N.J. at 357).

"In determining whether an insurer should be estopped from asserting exclusion defenses under policies because of prejudice to the insured, the test is

whether the insurer's acts or omissions 'constituted[d] a material encroachment upon the rights of an insured to protect itself by handling the claim directly and independently of the insurer.'" Reliance Ins. Co. v. Armstrong World Indus., Inc., 292 N.J. Super. 365, 375 (App. Div. 1996) (quoting Griggs, 88 N.J. at 359). "Prejudice justifying an estoppel against the insurer will be presumed where 'there has been a long lapse of time without any indication by the insurance carrier of a loss or rejection of coverage, during which the insured justifiably expects to be protected by the carrier . . . .'" Id. at 375-76 (quoting Griggs, 88 N.J. at 362).

AEIC acted unreasonably by waiting twenty months to disclaim coverage. Since McCoy first reported the claim, AEIC knew A.G. was sexually assaulted in her apartment. AEIC was entitled to a reasonable amount of time to investigate the claim; however, AEIC's adjuster closed the file without rendering a coverage decision or informing McCoy. Without hearing from AEIC, McCoy could assume AEIC resolved the claim. Indeed, McCoy sold his interest in CMS under the impression AEIC handled the claim.

We reject AEIC's argument it needed to wait until it received medical and police records on January 29, 2015, because the adjuster closed the file months earlier without further investigating the claim before rendering a coverage

decision. McCoy was entitled to, but did not receive, fair warning AEIC intended to disclaim coverage.

## II.

The trial judge awarded CMS $181,877.85 in attorney's fees. The judge arrived at this figure by multiplying a lodestar rate of $350 by the number of hours spent litigating the coverage issue less the lodestar rate multiplied by the time spent litigating the insurance broker claim (50.4 hours) and an abandoned negligence claim (19.45 hours). The judge also applied a ten percent across-the-board cut for services he determined excessive. He then combined that figure with disbursements incurred in litigating the coverage question less disbursements incurred for the insurance broker and negligence claims. The judge looked to numerous sources to justify the $350 lodestar rate. The judge also considered counsel's forty years of experience and certification as a civil trial attorney and determined the fee award was reasonable under RPC 1.5(a).

On appeal, both parties assail the fee award. AEIC argues the lodestar rate should have been $190, to reflect the market rate in the community and the rate counsel for AEIC was paid. CMS argues, on cross-appeal, the trial judge should not have deducted time spent litigating the insurance broker or

A-2056-17T3

abandoned negligence claims and erred by assessing a ten percent reduction to the fee award. We disagree with both parties and affirm the fee award.

Rule 4:42-9(a)(6) specifically permits a fee award in an action upon a liability or indemnity policy of insurance in favor of a successful claimant. A "trial judge has broad discretion as to when, where, and under what circumstances counsel fees may be proper and the amount to be awarded." Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co., 206 N.J. 596, 619 (2011) (quoting Iafelice ex rel. Wright v. Arpino, 319 N.J. Super. 581, 590 (App Div. 1999)). "In setting the lodestar, a trial court must first determine the reasonableness of the rates proposed by prevailing counsel in support of the fee application." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 22 (2004). "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community[] . . . for similar services by lawyers of reasonably comparable skill, experience, and reputation." Rendine v. Pantzer, 141 N.J. 292, 337 (1995) (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)). Next, the "court must determine whether the time expended in pursuit of the 'interests to be vindicated' . . . is equivalent to the time 'competent counsel reasonably would have expended to achieve a comparable result[.]'" Furst, 182 N.J. at 22 (quoting Rendine, 141 N.J. at 336).

"The court must not include excessive and unnecessary hours spent on the case in calculating the lodestar." Ibid. "Whether the hours the prevailing attorney devoted to any part of a case are excessive ultimately requires a consideration of what is reasonable under the circumstances." Id. at 22-23.

The trial judge did not abuse his discretion in arriving at a lodestar rate of $350. AEIC based its proposed figure of $190 on a certification of its claims examiner who attested to the market rate for coverage litigation and insurance defense in northern New Jersey. However, as the trial court pointed out, this figure only represents the market for counsel representing insurance companies, not claimants seeking coverage. Insurance companies have significantly more bargaining power than claimants in fee negotiations, and, in exchange, provide the lawyer with the security their bills will be paid. Comparatively, counsel for a claimant takes on more risk than counsel for the insurer in the form of volume of work and non-payment. The trial judge concluded counsel for CMS should not be paid a similar fee as counsel for AEIC because their respective cost/benefit analyses were different. Moreover, AEIC could have, but failed to, provided CMS with counsel at a negotiated rate under a reservation of rights.

We also conclude the trial judge exercised appropriate discretion in deducting time spent on litigating the insurance broker and abandoned

16

negligence claims from CMS's fee award. Initially, it was unclear whether the assault and battery exclusion had been added to the policy, which prompted CMS to bring a negligence claim against AEIC. It became evident in discovery that AEIC did add the assault and battery exclusion to the policy. Accordingly, CMS dropped the negligence claim. CMS also alleged AEIC's disclaimer of coverage was due in part to the broker's negligent procurement of a policy unfit for a residential building. This claim was essentially a contingency plan in the event CMS lost the coverage question.

The intent behind Rule 4:42-9(a)(6) "is that one covered by a policy is entitled to the full protection provided by the coverage, and that benefit should not be diluted by the insured's need to pay counsel fees in order to secure its rights under the policy." Liberty Village Assocs. v. W. Am. Ins. Co., 308 N.J. Super. 393, 406 (App. Div. 1998). Rule 4:42-9(a)(6) is properly used as a basis to obtain attorney's fees in successful actions to obtain coverage when an insurer refuses to indemnify or defend an insured's liability to a third party. Here, even if successful, CMS's negligence claims against AEIC did not bear on whether, under the policy, AEIC was obligated to defend CMS against A.G.'s claim. Therefore, it was proper for the trial judge to exclude any fees incurred litigating those claims because both fell outside the gambit of Rule 4:42-9(a)(6).

17

Finally, we reject the argument that the trial judge's ten-percent reduction to CMS's fee award was unreasonable.  In calculating the lodestar, it is not the "time <u>actually</u> expended" but the "time <u>reasonably</u> expended" that matters.  <u>Rendine</u>, 141 N.J. at 335 (emphasis in original) (quoting <u>Copeland v. Marshall</u>, 641 F.2d 880, 891 (D.C. Cir. 1980)).  It was not arbitrary to use a wholesale reduction to account for the time the trial judge found excessive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2056-17T3