**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4215-18T1
                A-4217-18T1

ESTATE OF RONALD
DOERFLER and STEPHANIE
E. DOERFLER,

      Plaintiffs-Appellants,

v.

FEDERAL INSURANCE
COMPANY,

      Defendant-Respondent.

_____

STEPHANIE E. DOERFLER,

      Plaintiff-Appellant,

v.

CHUBB INSURANCE COMPANY
OF NEW JERSEY,

      Defendant-Respondent.

_____

        Argued telephonically April 29, 2020 –
        Decided May 14, 2020

Before Judges Fuentes, Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket Nos. L-2960-14 and L-0483-14.

John N. Ellison (Reed Smith LLP) of the Pennsylvania Bar, admitted pro hac vice, argued the cause for appellants (Reed Smith LLP, attorneys; John N. Ellison and Douglas R. Widin, on the briefs).

Thomas Mc Kay, III argued the cause for respondents (Cozen O'Connor, attorneys; Thomas Mc Kay, III, Charles J. Jesuit, and Richard M. Mackowsky, on the brief).

PER CURIAM

These consolidated insurance coverage matters return to us after remand proceedings directed by our previous decision. Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301 (App. Div. 2018). In compliance with our instructions, the trial judge again considered the parties' cross-motions for summary judgment and rendered a thorough written opinion addressing each one of their respective contentions.

As explained in his decision, the judge found that the losses claimed by plaintiffs Estate of Ronald Doerfler (the estate) and Stephanie Doerfler (Doerfler) were not covered under their insurance policies when their homes were destroyed by flooding during Superstorm Sandy. As a result, the judge

granted the insurance companies' (defendants') motions for summary judgment, and denied plaintiffs' applications.

Plaintiffs now appeal from the judge's April 17, 2019 order memorializing his rulings and repeat the same arguments they unsuccessfully presented to the trial court. Having considered these contentions in light of the record and applicable law, we affirm substantially for the reasons set forth in the judge's thoughtful written decision.

In light of our determination, we need only briefly summarize the most salient facts. Doerfler owned a home located in Mantoloking and procured an insurance policy from defendant Chubb Insurance Company of America covering her real and personal property. Ronald Doerfler,[1] who lived on the same street in Mantoloking, obtained an identical policy insuring his home from defendant Federal Insurance Company, which is also a member of the Chubb Group of Insurance Companies.

The policies provided "deluxe contents coverage," but clearly stated that damage resulting from flood was not covered. The policies included the mandatory New Jersey notification that the policies did not cover damages from flood.

---

[1] Mr. Doerfler is now deceased.

Unless an exclusion applied, the policies covered "all risk" of physical loss. The "surface water exclusion" included the following language:

> [W]e do not cover any loss caused by: flood, surface water, waves, tidal water, overflow of water from a body of water, . . . ; or spray from any of these even if driven by wind.

In the exclusions sections, the policies specifically stated: "the words 'caused by' mean any loss that is contributed to, made worse by, or in any way results from that peril."

Plaintiffs also purchased separate flood insurance policies from Fidelity National Indemnity Insurance Company (Fidelity) which insured the structure of each of their homes for $250,000 and provided some coverage for the contents of their homes.

On October 29 and 30, 2012, Superstorm Sandy made landfall near Atlantic City, sixty miles south of Mantoloking. Wind gusts were as high as eighty miles per hour. A severe storm surge occurred with tides in Mantoloking rising between nine and eleven feet, not including wave height. The storm surge caused surface water to flood onto plaintiffs' properties and their homes ultimately collapsed. Plaintiffs notified defendants of their losses and submitted claims to Fidelity.

A-4215-18T1

Scott Shearer was Chubb's claims adjuster for the estate's property. Shearer retained Kimball J. Beasley of Wiss, Janney, Elstner Associates, Inc., an engineering firm, to investigate the damage to the estate's property. Beasley reported that wind was not a significant factor in the collapse of the home and instead, the damage was caused by storm surge. Based on Beasley's report, on January 18, 2013, Shearer informed the estate that the damage was caused by surface water and was therefore not covered by the policy.

Stephen Constanzo was Chubb's claims adjuster for Doerfler's property. On December 3, 2012, Jason Peddle and Harald Greve of Applied Engineering and Technology submitted a report based on their inspection of Doerfler's property. They concluded that the damage to Doerfler's home occurred because of storm surge and flood waters, not wind. "The structure was displaced from its foundation and collapsed by the force of the water surge and waves." On December 12, 2012, Constanzo denied Doerfler's insurance claim because of the surface water exclusion.

In March 2013, Fidelity paid plaintiffs the maximum available under their flood insurance policies.

Anthony Johnson of the American Meteorological Society prepared a report on behalf of defendants. Johnson concluded that the winds during Sandy

were not of sufficient magnitude to cause structural damage to plaintiffs' properties. Instead, the combination of "storm surge, tide, wave setup and waves" caused much higher water levels which damaged the properties. Johnson found that in Superstorm Sandy, a long period of "swell" waves struck the coast prior to the "gale force" winds. Johnson stated, "[t]he unique aspect of Sandy . . . was the multi-tide cycle increase of onshore winds prior to landfall. This caused multiple high tide cycles with tidal flooding and also helped produce catastrophic wave action." Johnson also noted that the width of the dunes and the location of the dunes near plaintiffs' properties prevented the dunes from absorbing the energy from the waves and providing sufficient protection to the homes.

Travis Miles, PhD, a professor of marine and coastal sciences at Rutgers University, submitted a report on behalf of plaintiffs. Miles discussed the uniqueness of Sandy compared to other types of hurricanes and tropical storms. Wind gusts near plaintiffs' properties were ninety-one miles per hour, while total rainfall was only between one and three inches. Miles agreed with Beasley that storm surge caused the damage to the properties, but according to Miles, storm surge is a "wind created and driven phenomenon."

A-4215-18T1

On the basis of this record, the parties filed cross-motions for summary judgment on the question of whether the surface water exclusion in plaintiffs' insurance policies barred them from recovering after their homes were destroyed in the flood that inundated their properties. In addressing this issue, the judge applied the well-settled legal principles governing the interpretation of insurance contracts.

"An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). An insurance policy should be interpreted in accordance with the "plain and ordinary meaning" of its terms. Mem'l Props. v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (citing Flomerfelt, 202 N.J. at 441).

Exclusions in insurance policies are presumptively valid and enforceable "if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" Flomerfelt, 202 N.J. at 441 (quoting Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997)). In contrast, courts will find "a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979).

A-4215-18T1

Generally, exclusions are narrowly construed.  Flomerfelt, 202 N.J. at 442.  The insurer has the burden of bringing the case within the exclusion.  Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998).  Courts must be careful, however, "not to disregard the 'clear import and intent' of a policy's exclusion."  Flomerfelt, 202 N.J. at 442 (quoting Westchester Fire Ins. Co. v. Cont'l Ins. Cos., 126 N.J. Super. 29, 41 (App. Div. 1973)).  "[F]ar-fetched interpretation[s] of a policy exclusion" are "insufficient to create an ambiguity requiring coverage."  Stafford v. T.H.E. Ins. Co., 309 N.J. Super. 97, 105 (App. Div. 1998).  Thus, "[i]n the absence of any ambiguity, courts 'should not write for the insured a better policy of insurance than the one purchased.'"  Gibson v. Callaghan, 158 N.J. 662, 670 (1999) (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990)).

After reviewing the record through the prism of these rules of insurance contract interpretation, the judge correctly concluded that plaintiffs' policies did not cover the losses they sustained in the flood that destroyed their homes.  As noted above, the surface water exclusion in the policies clearly applies to "any loss caused by:  flood, surface water, waves, tidal water, overflow of water from a body of water, . . .; or spray from any of these even if driven by wind."  Here, the record clearly indicates that plaintiffs' homes were destroyed by the surface

water that flooded their properties during the storm. Therefore, the judge properly concluded that the exclusions barred plaintiffs from recovering under their policies.

In so ruling, the judge correctly rejected plaintiffs' contention that "wind was the initiating and efficient proximate cause of the storm surge that destroyed plaintiffs' homes" and, because wind damage was covered under their policies, "the surface water exclusions do not apply" to them under Appleman's Rule. The efficient proximate cause doctrine, more commonly referred to as Appleman's Rule, applies to risks and exclusions where a non-covered peril is set in motion by a covered peril in a chain of causation. N.J. Transit Corp. v. Certain Underwriters at Lloyd's London, 461 N.J. Super. 440, 460 (App. Div. 2019); Franklin Packaging Co. v. Cal. Union Ins. Co., 171 N.J. Super. 188, 191 (App. Div. 1979).

> Where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produced the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss. It is not necessarily the last act in a chain of events which is, therefore, regarded as the proximate cause, but the efficient or predominant cause which sets into motion the chain of events producing the loss. An incidental peril outside the policy, contributing to the risk insured against, will not defeat recovery[.] In other words, it has been held that recovery may be allowed [w]here the

9                                                    A-4215-18T1

insured risk was the last step in the chain of causation set in motion by an uninsured peril, or where the insured risk itself set into operation a chain of causation in which the last step may have been an excepted risk.

[Franklin Packaging Co., 171 N.J. Super. at 191 (quoting 5 Appleman, Insurance Law & Practice § 3083 at 309-11 (1970)).]

We are satisfied that the trial judge correctly concluded that Appleman's Rule was inapplicable under the facts presented in this case. Here, the judge made the following findings: (1) the wind and the flood waters were not separate events; (2) "[w]hen a body of water overflows its normal boundaries and inundates an area of land that is normally dry, the event is a flood"; (3) Appleman's Rule was not helpful to plaintiffs because there were no sequential causes of their losses; (4) the term "caused by" in the policies was sufficiently clear and unambiguous; and (5) plaintiffs' damages were not caused by the wind.

The judge recognized that insurers may include "anti-sequential language" in their policies, stating that if multiple causes, some covered and some excluded, occur in a sequence of events to produce an individual loss, there is no coverage. Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 431 (App. Div. 2004). An anti-sequential clause can exclude coverage when an excluded peril, alongside a covered peril, either simultaneously or sequentially, causes damage to the insured. Ibid.

10

Here, plaintiffs' policies included a "caused by" provision that fulfilled the purpose of an anti-sequential clause. As noted above, this provision stated that "the words 'caused by' mean any loss that is contributed to, made worse by, or in any way results from that peril." In interpreting this provision to bar plaintiffs' contentions under Appleman's Rule, the judge stated:

> [T]he definition of "caused by["] provides sufficient explanation to be readily understood by the policyholder. The policy language defines the term "caused by" so as to eliminate any interpretation that occurrence must be a sole, independent and exclusive event. The policy language indicates that other causes may contribute to the loss without divesting the exclusion language of its ability to prohibit coverage for the loss. Had [defendants] intended to include sequential perils, [they] would have explicitly provided for a remedy within the language of the policy.

Thus, because plaintiffs' policies excluded them from recovering for any loss "contributed to, made worse by, or in any way results from" or caused by "flood, surface water, waves, tidal water, [or] overflow from a body of water," their claims were barred regardless of whether wind played any role in the loss. See Simonetti, 372 N.J. Super. at 431.

Plaintiffs also argued that the damage to their homes was caused by "storm surge" and, because "the surface water exclusions do not exclude loss caused by storm surge," their claims were covered by their policies. The judge correctly

rejected this contention, and found that the plain meaning of the surface water exclusion was to exclude damages caused by floodwaters. As stated above, plaintiffs' policies excluded losses caused by "flood, surface water, waves, tidal water, [or an] overflow of water from a body of water." The exclusion was unambiguous, and defendants were not required to list every synonym that could be used to describe a flood. See Stafford, 309 N.J. Super. at 105.

Finally, plaintiffs alleged that their residences "collapsed" during the flood and because "building collapse" was not an excluded loss under their policies, their damages should have been covered. The judge properly concluded that this argument lacked merit.

The judge found that the collapse of the homes was the "form" of the damages plaintiffs suffered, and not the "cause" of these damages. Indeed, there is no evidence in the record suggesting there was a defect within the walls of plaintiffs' homes that would account for the collapse of the structures. Instead, the record clearly established that the water pressure caused by the flood waters inundating the properties directly caused their collapse. Because the surface waters that destroyed the homes was an excluded peril, the judge properly denied coverage.

On appeal, plaintiffs' arguments are identical to those considered and rejected by the trial judge. Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as the trial judge did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007) (citing Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). We accord no deference to the trial judge's conclusions on issues of law and review issues of law de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Applying these principles, we are satisfied that the trial judge properly granted summary judgment to defendants on the coverage issues discussed in this opinion. We affirm substantially for the reasons expressed by the judge in his comprehensive April 17, 2019 written decision. To the extent we have not

addressed any of plaintiffs' remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4215-18T1