853 A.2d 974 (2004)
371 N.J.Super. 482
L.C.S., INC. t/a D'Jais Bar, Inc., Plaintiff-Respondent/Cross-Appellant,
v.
LEXINGTON INSURANCE COMPANY, AIG Claim Services, Inc., Defendants-Appellants/Cross-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 2004.
Decided August 2, 2004.
*976 Wendy L. Mager, Princeton, argued the cause for appellants (Smith, Stratton, Wise, Heher & Brennan, attorneys; William J. Brennan, III, of counsel and on the brief).
Frank P. Arleo, Chatham, argued the cause for respondent (Arleo & Donohue, *977 attorneys; Mr. Arleo, of counsel and on the brief).
Before Judges WEFING, COLLESTER and FUENTES.
The opinion of the court was delivered by
COLLESTER, J.A.D.
On December 23, 1996, Thomas M. Cosgrove filed a three-count complaint against D'Jais Bar, Inc., Larry R. Fore, a bouncer, and two fictitious employees, seeking damages for injuries he suffered in the early hours of July 4, 1995, while a patron at D'Jais Bar located at 18th and Ocean Avenues in Belmar. Count one alleged
5.... Defendant Fore without warning or right struck Plaintiff Cosgrove in the face with a closed fist.
6. Plaintiff Cosgrove fell to the ground and was rendered unconscious as a result of being struck by Defendant Fore.
7. Plaintiff Cosgrove suffered bodily injury as a result of being struck by Defendant Fore including a broken arm and a concussion.
8. As a direct and proximate result of the acts of defendant Fore, as aforesaid, plaintiff Thomas M. Cosgrove suffered severe and permanent injuries.
9. The act by Defendant Fore constitutes assault, contrary to N.J.S.A. 2C:12-1(b)(1).
Count two incorporated all allegations of count one and alleged
2. The acts of Defendant Fore, and John Doe I and John Doe II occurred in the negligent performance of their duties as an employee [sic] of the defendant D'Jais Bar.
Count three incorporated all allegations of counts one and two and alleged
2. The defendant D'Jais Bar was negligent in the hiring, training, employment and supervision of its "bouncers" and employees.
3. The injuries of the plaintiff, Thomas M. Cosgrove, occurred as a direct consequence of the negligence of defendants aforesaid.
On September 17, 1997, L.C.S., D'Jais' corporate parent, forwarded a copy of the Cosgrove complaint to its insurance carrier, Lexington Insurance Company. On October 22, 1997, AIG Claims Services Inc., the authorized representative of Lexington Insurance Company, notified L.C.S. and Larry Fore that coverage was disclaimed and that the company would not provide a defense to the Cosgrove complaint or indemnify for any resulting settlement, verdict or judgment. The disclaimer was based on a endorsement to the policy entitled "ASSAULT AND BATTERY EXCLUSION," which provided as follows:
This insurance does not apply to "Bodily Injury," "Property Damage," "Personal Injury," "Advertising Injury," or "Medical Expenses" arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation of or direction of the Insured, his employees, patrons or other persons.
The letter specified that coverage was denied as to count one because it alleged an intentional assault by Fore on Cosgrove. Coverage on count two was disclaimed on the grounds that the alleged negligence of Fore in the performance of his duties as an employee "arises from the assault and/or its prevention or suppression." As to the count three, the disclaimer letter stated that "D'Jais Bar is not afforded coverage, since the negligent hiring, training, employment or supervision of Larry Fore arises out of the assault or any act or omission in connection with the prevention or suppression of such acts."
*978 The penultimate paragraph of the disclaimer letter invited the insured to contact Lexington concerning any "additional developments" or provide any information which the insured believed rendered the disclaimer "invalid, incorrect or improper." On December 3, 1997, Kip Connor, L.C.S.'s principal, responded. He enclosed handwritten statements by D'Jais employees who were on duty on July 5, 1995, and asserted that Cosgrove groped a woman patron and then attacked Fore, who in turn struck Cosgrove in self-defense.
After reviewing Connor's letter and enclosures, Lexington responded on December 9, 1997, by reaffirming its denial of coverage. At that point L.C.S. retained counsel at its own expense to defend the Cosgrove complaint. Following discovery, trial began on June 26, 2000, and concluded on July 19, 2000, culminating in a settlement of $25,000, which was attributed by counsel to the second count of the complaint.
On March 2, 2001, L.C.S. filed a complaint against Lexington seeking damages for breach of the insurance contract and extracontractual damages based on the allegation that Lexington acted in bad faith by refusing to defend the negligence counts of the Cosgrove complaint. Cross-motions were filed for summary judgment. L.C.S. submitted the certification of its trial attorney in the Cosgrove matter in which he explained the reasons for the settlement.
Prior to the trial, I took the depositions of the plaintiff, Thomas Cosgrove. Annexed hereto are relevant portions of Mr. Cosgrove's deposition[1] testimony concerning the incident in question. Mr. Cosgrove was unable to conclusively identify at his deposition as to whether he was intentionally assaulted during the incident or was the victim of the negligent conduct of a D'Jais employee.
At trial, Mr. Cosgrove's testimony was consistent with his deposition testimony in that he did not actually state whether he was intentionally assaulted or negligently injured while being escorted from the bar.
The testimony of Mr. Cosgrove's witnesses were similarly unclear concerning the causes of injuries.
During the plaintiff's case-in-chief, this case was settled for $25,000. The case was specifically settled only on Count Two of plaintiff's Complaint, alleging negligence. The balance of plaintiff's case was dismissed by Order of the Court.
Judge Bryan D. Garutto granted partial summary judgment to L.C.S. on the breach of contract claim, concluding that the assault and battery exclusion did not *979 bar coverage for the third count alleging negligent "hiring, training, employment and supervision of [plaintiff's] bouncers and employees." He denied reconsideration but granted Lexington's motion to dismiss the count of the complaint alleging bad faith by the insurer. Finally, by order of judgment entered on May 13, 2002, he awarded L.C.S. damages equal to the amount paid to settle the Cosgrove action, plus interest; one half of the costs of defending the Cosgrove action, plus interest; and the legal fees paid by L.C.S. in its action against Lexington, excluding those incurred in its unsuccessful effort to obtain extracontractual damages on its claim of bad faith by the insurer. Lexington appeals the judgment holding it liable for damages for failure to defend in the Cosgrove suit and the resulting award in favor of L.C.S. In turn, L.C.S. cross-appeals from that part of the order for judgment restricting recovery in the Cosgrove suit to one-half of its defense costs.
The thrust of Lexington's argument is that it was under no duty to defend the Cosgrove complaint because all three counts related to an injury "arising out of" an assault and battery. In response, L.C.S. argues that counts one and two of the Cosgrove complaint pleaded alternative theories of liability, one intentional and one negligent, while count three pleaded a negligent act independent of the assault, namely, the negligent hiring, training, employment and supervision of its employees. Accordingly, plaintiff argues that defendant had a duty to defend counts two and three of the Cosgrove complaint.
An insurer's duty to defend an action against the insured is determined by whether the allegations set forth in the complainant's pleadings fall within the purview of the policy language. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512, 210 A.2d 221, 225 (1965); Voorhees v. Preferred Mut. Ins. Co., 246 N.J.Super. 564, 569, 588 A.2d 417, 419-20 (App.Div.1991), aff'd, 128 N.J. 165, 607 A.2d 1255 (1992). It is the nature of the claim for damages, not the details of the accident or the ultimate outcome, which triggers the obligation to defend. Flanagin, supra, 44 N.J. at 512, 210 A.2d at 225. If the complaint is ambiguous, doubts are resolved in favor of the insured and therefore for coverage. Central Nat'l Ins. Co. v. Utica Nat'l Ins. Group, 232 N.J.Super. 467, 470, 557 A.2d 693, 694 (App.Div.1989). When multiple alternative courses of action are set forth, the duty to defend will continue until every covered claim is eliminated. Voorhees, supra, 128 N.J. at 174, 607 A.2d at 1259; Mt. Hope Inn v. Traveler's Indem. Co., 157 N.J.Super. 431, 440-441, 384 A.2d 1159, 1163-64 (Law Div.1978).
[T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against. And the duty is not abrogated by the fact that the cause of action stated cannot be maintained against the insured either in law or in fact  in other words, because the cause is groundless, false or fraudulent. Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy.
So in the resolution of the problem, the complaint should be laid alongside the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured.
[Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198, 203 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954).]
*980 In comparing the allegations in the complaint with the language of the policy, we are guided by basic rules of construction. An insurance policy will be enforced as written when its terms are clear so that the expectations of the parties are fulfilled. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717, 720-21 (1960); Scarfi v. Aetna Cas. & Sur. Co., 233 N.J.Super. 509, 514, 559 A.2d 459, 462 (App.Div.1989). When ambiguous, the terms are construed against the insurer and in favor of the insured. Doto v. Russo, 140 N.J. 544, 556, 659 A.2d 1371, 1376-77 (1995); Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173-74, 607 A.2d 1255, 1259 (1992). When the issue involves an exclusion clause, it is strictly construed against the insurer. Aetna Ins. Co. v. Weiss, 174 N.J.Super. 292, 296, 416 A.2d 426, 428-29 (App.Div.), certif. denied, 85 N.J. 127, 425 A.2d 284 (1980).
No case in this State has construed the wording of the assault and battery exclusion in the Lexington policy. In Stafford v. T.H.E. Insurance Co., 309 N.J.Super. 97, 706 A.2d 785 (App.Div.1998), the plaintiffs were patrons at a nightclub who were shot by other patrons. The complaints filed alleged various causes of action including negligent hiring, training and supervision of employees. The insurance company disclaimed coverage based on an endorsement excluding coverage for assault and battery, which read as follows:
In consideration of the premium charge, it is agreed that NO coverage of any kind (including but not limited to cost of defense) is covered by this policy for Bodily Injury and/or Property Damage arising out of or caused in whole or in part by an assault/battery. Further NO coverage is provided if the underlying operative facts constitute an assault and/or battery irrespective of whether the claim alleges negligent hiring, supervision and/or retention against the insured or any other negligent action. (Emphasis supplied.)
We held that the language of the policy was unambiguous and plainly indicated to the average reader that no matter who committed an assault and battery, there was no coverage under the policy. Id. at 104-105, 706 A.2d at 788-89.
The contrast to the assault and battery exclusion in this case is obvious. While the Stafford exclusion specifically included allegations of negligent hiring and supervision, it is not clear to the average reader that the Lexington exclusion covers the alleged negligent activity in the third count of the Cosgrove complaint.
Lexington argues that the exclusionary phrase "arising out of assault and battery or not of any act or omission in connection with the prevention or suppression of such acts," encompasses the third count because the Cosgrove complaint incorporates the allegations of the first count, which sets forth the intentional tort of an assault and battery by Fore. We disagree. The count does not relate to Fore's actions but rather to the actions of the employer in the hiring, training and supervision of Fore as well as other employees who may have been involved in the incident. It may well be that subsequent discovery would clarify that the third count was drafted only to avoid the standard exclusion for assault and battery by seeking the "obvious refuges" of "negligent hiring, supervision and/or retention." Stafford, supra, 309 N.J.Super. at 105, 706 A.2d at 789. However, we cannot assume that a claim of employer negligence in hiring, training and supervising employees is a bogus or thinly veiled attempt by a plaintiff designed only to reach the pot of gold at the end of the rainbow of an employer general liability policy. For a court to uphold denial of insurance coverage on an assumption that a particular cause of *981 action is specious or doomed to failure by summary judgment or jury verdict contradicts established law as well as public policy in favor of finding coverage absent the clear applicability of a policy exclusion.
To hold otherwise would be to place upon the insured the burden of demonstrating in advance of the underlying litigation which of the competing theories of recovery against it was applicable for purposes of insurance, thereby frustrating one of the basic purposes of such a clause in the insurance contract  protection of the insured from the expenses of litigation.
[Voorhees, supra, 128 N.J. at 174, 607 A.2d at 1259 (citing Solo Cup Co. v. Federal Ins. Co., 619 F.2d 1178, 1185 (7th Cir.1980)).]
This is not to say that the insurer is without recourse when an alternative count for negligence is tied with a count for an intentional tort. The insurer may enter the litigation under a reservation of rights and protect itself by filing a separate declaratory judgment action, thereby preserving its right to subsequently withdraw from the defense if discovery reveals the applicability of the exclusion.
Lexington argues that the "arising out of" language in the policy exclusion encompasses the negligence allegations in counts two and three of the Cosgrove complaint. Whether used to define or exclude coverage, the phrase "arising out of" is given a broad definition. In American Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 713 A.2d 1007 (1998), Justice Stein considered the common meaning of the phrase, stating,
The critical phrase "arising out of" which frequently appears in insurance policies, has been interpreted expansively by New Jersey courts in insurance coverage litigation. "The phrase `arising out of' has been defined broadly in other insurance coverage decisions to mean conduct `originating from,' growing out of' or having a `substantial nexus' with the activity for which coverage is provided." Records v. Aetna Life & Cas. Ins., 294 N.J.Super. 463, 468, 683 A.2d 834[, 837] (App.Div.1996) (quoting Westchester Fire Ins. Co. v. Continental Ins. Cos., 126 N.J.Super. 29, 38, 312 A.2d 664[, 669] (App.Div.1973), aff'd o.b., 65 N.J. 152, 319 A.2d 732 (1974)), certif. denied, 151 N.J. 463, 700 A.2d 876 (1997); see also, Allstate Ins. Co. v. Moraca, 244 N.J.Super. 5, 13 n. 1, 581 A.2d 510[, 514 n. 1] (App.Div.1990)(noting that exclusionary language in homeowner's policy barring coverage for injuries "arising out of" ownership or use of motor vehicle was enforceable if "accident or injury `was connected with,' `had its origins in,' `grew out of,' `flowed from,' or `was incident to' the use of an automobile") (quoting Hogle v. Hogle, 167 Conn. 572, 356 A.2d 172 (1975)).
[Id. at 35-36, 713 A.2d at 1010.]
In Prudential Property & Cas. Ins. Co. v. Brenner, 350 N.J.Super. 316, 795 A.2d 286 (App.Div.2002), we considered a policy exclusion for bodily injury "arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance" where the insurer sought a declaratory judgment on liability coverage for the death of a drug dealer. The dealer was shot after the insured and others went to the dealer's home to obtain marijuana. While the insured's purpose was only to purchase drugs, he was aware of his confederate's plan to rob the dealer. We held that a clear nexus existed between the insured's attempt to obtain the illegal drugs and the fatal shooting of the dealer. We stated,
It is entirely relevant that their actions were wholly focused on the use and possession of illegal drugs. It is this activity which the exclusion clearly and expressly *982 addresses. In the fact of clear and unambiguous language and undisputed conduct encompassed by the policy language, we decline to engage in a strained construction to impose coverage.... [T]here is a clear nexus between the fatal shooting of [the dealer] and [the insured's] attempt to obtain marijuana.
[Id. at 322-23, 795 A.2d at 289-90.]
We find no such "clear nexus" in the instant case between the assault and battery alleged in the first count of the Cosgrove complaint and the allegation of negligent hiring, training or supervision of employees in the third count. The fact that the incident took place at a bar and involved employees of the bar does not trigger the policy exclusion for the third count of the complaint. Indeed if Cosgrove's injuries were caused by a negligent act unrelated to the assault and battery, as he alleges in count two of the complaint, then the exclusion relied on by Lexington is clearly inapplicable.
Moreover, we find that the severability clause within the insurance policy required Lexington to tender a defense to L.C.S. The contract defined the insured as both the bar and its employees, and the severability claim provided:
Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage part to the first Named Insured, this insurance applies:
a. As if each Named Insured were the only Named Insured; and
b. Separately to each insured against whom a claim is made or "suit" is brought.
Since the bar was a separate insured, it was entitled to a separate defense on the separate and distinct allegation for negligent hiring, training and supervision of its employees. Our Supreme Court has held that negligent hiring of an incompetent or unfit employee may result in liability of the employer to a third party even when the employee was not acting within the scope of his employment. DiCosala v. Kay, 91 N.J. 159, 174, 450 A.2d 508, 516 (1982) ("The wrong here redressed is negligence of the employer in the hiring or retention of employees whose qualities unreasonably expose the public to a risk of harm.").
Lexington next argues that even if the Cosgrove complaint stated a theory not encompassed by the assault and battery exclusion, the insurer was entitled to a trial to determine whether in fact the claim was covered. Lexington relies on Burd v. Sussex Mutual Ins. Co., 56 N.J. 383, 267 A.2d 7 (1970), which stated an exception to the general rule that a duty to defend exists after comparison of the complaint and the policy to determine if the allegations sustained require payment by the insurer. That is, in circumstances where coverage or the duty to pay depends upon a factual issue which cannot be resolved by the trial of a civil complaint against the insured, the duty to defend may depend upon the actual facts rather than the factual allegations in the complaint. Burd, supra, 56 N.J. at 388, 267 A.2d at 9-10; Voorhees, supra, 246 N.J.Super. at 576, 588 A.2d at 423. The Supreme Court noted that in some such cases the carrier would be placed in a conflict position with its insured so that the carrier could not defend such an action with "complete devotion to the insured's interest."
In Burd, a shooting incident led to the conviction of the insured for atrocious assault and battery. Thereafter, the victim filed a complaint for damages, alleging in the first count that Burd intentionally shot him and in the second that Burd negligently shot him. The insurer refused to defend the suit on grounds that the policy expressly excluded coverage for bodily injury *983 intentionally caused by the insured. The jury returned a general verdict for damages of $8,500. Burd sued the carrier to recover the cost of the judgment and the cost he incurred in defending the action. The carrier relied upon the finding against Burd in the criminal case that he intentionally wounded the victim while Burd argued that by failing to defend the civil action against him, the carrier could not challenge his allegation that the injuries were inflicted negligently.
Chief Justice Weintraub stressed that if Burd had been represented by the insurer at the civil trial, it would be a conflict of interest on the issue as to whether the injuries were intentionally inflicted within the meaning of the exclusionary clause of the policy. He stated:
There may be cases in which the interests of the carrier and the insured coincide so that the carrier can defend such an action with complete devotion to the insured's interests. But if the trial will leave the question of coverage unresolved so that the insured may later be called upon to pay, or if the case may be so defended by a carrier as to prejudice the insured, thereafter upon the issue of coverage, the carrier should not be permitted to control the defense. That was the situation in the case at hand.
... In such circumstances the carrier should not be estopped from disputing coverage because it refused to defend. On the contrary, the carrier should not be permitted to assume the defense if it intends to dispute the obligation to pay a plaintiff's judgment unless of course the insured expressly agrees to that reservation. That is not to free the carrier from his covenant to defend, but rather to translate his obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay.
[Burd, supra, 56 N.J. at 389-90, 267 A.2d at 10.]
The Chief Justice then stated that the coverage issue could be resolved by a separate proceeding before or after the civil trial on the matter.
Whenever the carrier's position so diverges from the insured's that the carrier cannot defend the action with complete fidelity to the insured, there must be a proceeding in which the carrier and the insured, represented by counsel of their own choice, may fight out their differences. That action may, as here, follow the trial of the third party's suit against the insured or, unless for special reasons, it would be unfair to do so, a declaratory judgment proceeding may be brought in advance of trial by the carrier or the insured, to that end, that the third party suit may be defended by the party ultimately liable.
[Id. at 391, 267 A.2d at 11.]
We considered the rationale of Burd in our subsequent decision in Voorhees, supra, 246 N.J.Super. at 564, 588 A.2d at 417. We rejected the insurer's contention that since its interest and that of the insured were not co-extensive, it had the ethical obligation to refuse to defend its insured after it denied coverage. We stated:
Even assuming that there was a conflict of interest, the result would not be to free Preferred from its covenant to defend, but rather to translate its obligations into one to reimburse the insured if it later developed that the claim was within the policy covenant to pay....Suffice it to say here, Preferred, confronted with a real or potential conflict could not, consistent with its fiduciary obligation, and without any further investigation, see, Griggs v. Bertram, 88 N.J. 347, 357, 443 A.2d 163 [, 168] (1982), or arrangement with Voorhees, *984 simply decline liability, leaving the insured to fend for herself.
[Id. at 577, 588 A.2d at 424.]
Following Voorhees, it is our holding in the instant case that if a claim is stated in two conflicting theories in a complaint for damages, one which requires coverage and the other which does not, the carrier must defend and may do so under reservation of rights. As we stated in Voorhees,
We do not read Burd v. Sussex Mut. Ins. Co., 56 N.J. [at] 394, 267 A.2d 7 [at 13], as requiring a hearing to determine whether Voorhees' acts were intentional or only reckless or negligent. Our Supreme Court in Burd said that in the event the insured declines to defend its insured because of a perceived conflict and a judgment is entered, "the carrier may be heard upon the coverage issue in a proceeding upon the policy" and it "will have to reimburse the insured for the cost of the defense if the tort judgment is held to be within the covenant to pay." Ibid. We need not delve into the question concerning what type of hearing was contemplated by the court. Here the Sisto suit was settled and no judgment was entered against the insured. Based on the small amount of the settlement, Voorhees can fairly argue that Sisto's claims, which encompass both intentional and reckless or negligent conduct, were "wholly defeated." Id. at 393, 267 A.2d 7 [at 12]. In that situation the insurer "may fairly be required to reimburse the insured for the cost of the successful defense even though the [insurer] would not have to pay the judgment if the case had gone against the insured on a finding of intentional injury." Id. at 393, 267 A.2d 7 [at 12].
[Id. at 578, 588 A.2d at 429.]
As in Voorhees, the Cosgrove suit was settled. While Lexington may deem the amount excessive, it can hardly be heard on the issue since it declined to defend. Similarly, all of the proofs presented  the testimony of Cosgrove both at deposition and trial, the certification from trial counsel and the Cosgrove settlement as reported on the record  indicate that settlement was based upon a negligence theory. While Lexington obviously disputes the issue, we state once again that it had its opportunity to participate in the defense of the action under reservation of rights but chose instead to disclaim and leave its insured to fend for itself. Accordingly, Lexington is not entitled to a hearing to re-litigate on the issue of whether Cosgrove's injuries were the proximate result of a negligent or intentional act.
We turn now to the cross-appeal by L.C.S. in which it alleges the trial judge erred in awarding only fifty percent of its defense costs in the Cosgrove action. In so finding, Judge Garruto said:
While it is difficult to apportion them, I cannot visit all of the costs on the  on the carrier in this circumstance. And I think a fifty percent attribution on the McElroy fees and the Shamy fees would be appropriate. Accordingly, the fees that they would be entitled to is one half of $39,758.39 and one half of $2,618.50, respectively.
L.C.S. argues that throughout the litigation, it repeatedly requested Lexington to assume the defense and Lexington repeatedly refused to defend any part of the lawsuit even under reservation of rights so that L.C.S. was forced to hire its own counsel to defend the entire action. L.C.S. also points out the deposition testimony of its trial counsel was that he could not allocate his time between the defense of the negligence claims and the defense of the intentional tort claims. Therefore, L.C.S. argues that there was no reasonable basis to apportion the costs and that *985 Lexington should pay all of the defense costs due to its refusal to participate in the action.
The case in point is SL Industries, Ins. v. American Motorists Ins. Co., 128 N.J. 188, 607 A.2d 1266 (1992). In considering the issue of reimbursement of costs of defense to the insured, the Supreme Court adopted the general rule that when an insurer has wrongfully refused to defend an action and is later required to reimburse an insured for defense costs, the duty of reimbursement is limited to allegations covered under the policy if there can be apportionment between covered and non-covered claims. Id. at 214-15, 607 A.2d at 1280-81. The court then went on to declare:
Although we adopt the general rule favored by most jurisdictions, we note that our interpretation differs from that of a number of courts that have applied it. Those courts presume that apportioning the costs will be very difficult and that the exception, requiring insurers to pay all of the defense costs if they are not capable of apportionment, thus applies more often than the rule requiring apportionment ... [citation omitted]. Those courts implicitly require a greater degree of certainty in determining the allocability of costs than is either necessary or fair. We recognize that insurers, insureds and courts will rarely be able to determine the allocation of defense costs with scientific certainty. However, the lack of scientific certainty does not justify imposing all of the costs on the insurer by default. The legal system frequently resolves issues involving considerable uncertainty. We presume that the insurer and insured can negotiate a satisfactory settlement that fairly apportions the defense costs. When they are unable to agree, we likewise presume that our courts will be able to analyze the allegations in the complaint in light of the coverage of the policy to arrive at a fair division of costs.
[Id. at 215-16, 607 A.2d at 1280.]
See also, Aetna Cas. & Sur. Co. v. Ply Gem Industries, Inc., 343 N.J.Super. 430, 463, 778 A.2d 1132, 1152 (App.Div.), certif. denied, 170 N.J. 390, 788 A.2d 774 (2001); Grand Cove II Condominium Ass'n, Inc. v. Ginsberg, 291 N.J.Super. 58, 72-74, 676 A.2d 1123, 1130-32 (App.Div.1996).
There is no magic formula to assist the trial court in determining a fair allocation of the costs. L.C.S.'s defense attorney in the Cosgrove action did not delineate his timesheets to reflect how much time he spent on each claim, and he was unable to submit evidence with respect to an allocation. We agree with Lexington that accepting the trial court's predicate finding of coverage for count three, apportionment of fifty percent of the defense costs to Lexington was fair, within the parameters set forth in SL Industries and within the proper discretion of the trial judge.
Affirmed.
NOTES
[1] The deposition testimony read as follows:

Q: Now, you contend that Larry Fore struck you?
A: Yes.
Q: Could you tell me the dynamics of how that occurred?
A: Well, we're standing face-to-face. As I'm walking backwards I hit a dead end, which is more of the bouncers that he works with so, so I can't go backwards anymore. At that time I turned around to look to see what was happening behind me. Then I was struck, and I was struck in the left side of my face. Larry Fore was standing in front of me. Had he been right handed the blow would have come from him, and he seemed to be the one that was most irate out of everybody else. Like I stated before I didn't hear any other bouncers make any statements to me or say anything to me. It seemed that Larry Fore was out to get me, and he was the only one. Him alone.
Q: Well, did you see him strike you?
A: No. I didn't.
Q: So you don't know who struck you. Is that a fair statement?
A: That's a fair statement, but if I was to venture a guess his name would, being he was the instigator.