NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2330-17T2

NICOLE PICKETT, on behalf
of  the ESTATE OF ROGER
WADDELL PICKETT, II,

     Plaintiff,

v.

MOORE'S LOUNGE (also known
as BILL AND RUTH'S) and
JAMES D. CORLEY, JR.,

     Defendants,

and

EMRO, INC.,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

NORTHFIELD INSURANCE
COMPANY[1],

     Third-Party Defendant-
     Respondent,

and

<div style="border:1px solid black; display:inline-block; padding:8px; text-align:center;">

**APPROVED FOR PUBLICATION**

**August 25, 2020**

**APPELLATE DIVISION**

</div>

---

[1]  Improperly pled as Northland Insurance Company.

PETROCCI AGENCY, LLC,

     Third-Party Defendant.

_____

Argued October 29, 2019 – Decided August 25, 2020

Before Judges Messano, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-5292-15.

Jonathan Michael Ettman argued the cause for appellant (Feitlin, Youngman, Karas & Gerson, LLC, attorneys; Frederick Evan Gerson, on the briefs).

Francis E. Borowsky, Jr., argued the cause for respondent (Borowsky & Borowsky, LLC, attorneys; Francis E. Borowsky, Jr., of counsel and on the brief; Adam K. Gallagher, on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

This insurance coverage case requires us to interpret the assault-or-battery exclusion in a tavern's commercial general liability policy. In excluding damage claims "arising out of any act of 'assault' or 'battery' committed by any person," the exclusion expressly encompasses claims "arising out of . . . any act or omission in connection with the prevention or suppression of such 'assault' or 'battery.'" The estate of Roger Pickett, a tavern patron, sued the tavern owner, EMRO, Inc., for damages after a tavern invitee

fatally shot Pickett following a verbal argument. The estate alleged EMRO negligently permitted the shooter to enter the tavern armed, remain there, and then intentionally shoot Pickett. EMRO and its insurance producer, whom EMRO sued for failing to procure adequate coverage, settled with the estate. Then, EMRO sought indemnification from its insurer, Northfield Insurance Co., for its settlement share and defense costs. In denying coverage, Northfield invoked the assault-or-battery exclusion. Then followed EMRO's action against Northfield, the court's summary judgment dismissal, and the present appeal. As we conclude that the exclusion unambiguously bars EMRO's indemnification claim, we affirm.

I.

Early on New Year's Day, Pickett and James D. Corley got into an argument in Moore's Lounge in Jersey City. As Pickett turned to walk away, Corley shot him three times, killing him. Corley was convicted of aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), and is currently incarcerated.

Pickett's estate alleged the tavern's staff subjected Pickett and other customers to a weapons search before they entered, but Corley, a retired police officer and a regular customer, was allowed to enter with a concealed weapon. The estate also alleged that the staff continued to serve Corley after he had

3

already consumed excessive amounts of alcohol and displayed signs of intoxication.

The estate's seven-count complaint against Corley and EMRO[2] included a wrongful death count against all defendants, based on defendants' "actions and/or negligence"; an assault and battery claim against Corley, for intentionally shooting Pickett; and a claim against EMRO for violating the Licensed Alcoholic Beverage Server Fair Liability Act, N.J.S.A. 2A:22A-2, for serving Corley alcohol despite his excessive consumption and visible intoxication.

The remaining four counts alleged EMRO's negligence. In three of those counts, the estate alleged EMRO negligently managed its employees whose incompetence and unfitness caused Pickett's death. One count pertained to negligent hiring; another to training, supervision and oversight; and a third to retention. The estate also alleged generally that EMRO negligently failed to ensure that Pickett, as a business invitee, was free from reasonably foreseeable criminal activity.

EMRO sought a defense and indemnification from Northfield. EMRO had provided Northfield with a notice of claim shortly after the shooting. As it

---

[2] The estate initially named the tavern by its common name, Moore's Lounge, which was also known as Bill and Ruth's; and the estate included fictitiously named persons and entities.

did in response to the notice, Northfield invoked the policy's assault-or-battery exclusion and denied EMRO's request for coverage.[3] A policy endorsement entitled "**EXCLUSION - ASSAULT OR BATTERY,**" under the heading "**PROVISIONS**," states:

**1.** The following exclusion is added to Paragraph **2., Exclusions, of SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Assault Or Battery**

"Bodily injury" or "property damage" arising out of any act of "assault" or "battery" committed by any person, including any act or omission in connection with the prevention or suppression of such "assault" or "battery".

. . . .

**3.** The following is added to the **DEFINITIONS** Section:

"Assault" means any attempt or threat to inflict injury to another, including any conduct that would reasonably place another in apprehension of such injury.

"Battery" means any intentional, reckless or offensive physical contact with, or any use of force against, a person without his or her consent that inflicts some injury, regardless of whether the resulting injury inflicted is intended or expected.

---

[3] The insurer also invoked the policy's liquor exclusion. For reasons stated below, we need not address it in detail.

A-2330-17T2

Along with its answer to the estate's complaint, EMRO filed its third-party complaint against Northfield for coverage.[4] EMRO also sued its "agent/broker" for damages caused by its negligence and breach of promise to procure adequate coverage.[5]

In their settlement with the estate, EMRO and the insurance producer agreed to pay $50,000 and $100,000 respectively. The settlement expressly provided that Northfield was not a party to the settlement, and EMRO reserved its rights to proceed against it. EMRO thereafter moved for summary judgment against Northfield, seeking indemnification of its $50,000 settlement, plus $45,251.77 in defense fees and costs. Northfield cross-moved for summary judgment.

In granting summary judgment to Northfield, the trial court held that the assault-or-battery exclusion barred EMRO's claim, because the estate sought damages for bodily injury arising out of Corley's assault or battery of Pickett, and the estate's negligence-based claims referred to, as the policy stated, "any

---

[4] EMRO also included claims against Northfield of fraud, bad faith, and violation of the Unfair Claims Settlement Practices Act.

[5] EMRO did not precisely define its producer's role. See TWBC III, Inc. v. Certain Underwriters at Lloyd's London Subscribing to Policy No. 894 305481 92, 323 N.J. Super. 60, 65 (App. Div. 1999) (distinguishing between insurance agent and broker under N.J.S.A. 17:22A-2(f) and -2(g), since repealed by L. 2001, c. 210, § 27, which uses the term "insurance producer," N.J.S.A. 17:22A-28).

act or omission in connection with the prevention or suppression of such 'assault' or 'battery.'" The court analyzed two cases involving different versions of assault-or-battery exclusions: Stafford v. T.H.E. Insurance Co., 309 N.J. Super. 97 (App. Div. 1998), holding the exclusion barred the insured's claim, and L.C.S. Inc. v. Lexington Insurance Co., 371 N.J. Super. 482 (App. Div. 2004), reaching the opposite result. We discuss the two cases at length below.

The trial court also noted that EMRO did not contest that the liquor exclusion applied to the estate's claim under the Licensed Alcoholic Beverage Service Fair Liability Act and its allegation that EMRO furnished alcoholic beverages to Corley after he was already under the influence. Therefore, the court also granted summary judgment "as to the liquor liability exception."

On appeal, EMRO contends the trial court misapplied Stafford and L.C.S., and the assault-or-battery exclusion does not apply to the estate's negligence-based claims, because the policy is ambiguous and does not expressly exclude claims based on negligent hiring, training and retention.

II.

This appeal turns on a purely legal question: our interpretation of the Northfield policy. See Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 450 N.J. Super. 400, 406 (App. Div. 2017) (stating "[i]nterpretation of an

7

insurance policy . . . present[s] a legal question, which we review de novo"). As the record discloses no genuine issue of material fact, our resolution of that question will determine whether Northfield was entitled to summary judgment. See Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 224 N.J. 189, 199 (2016) (stating that a movant is entitled to summary judgment if the record discloses no genuine issue of material fact and "the moving party is entitled to a judgment or order as a matter of law"). We consider these issues do novo. Ibid.

The principles governing our interpretative task are well-settled. "If the plain language of the policy is unambiguous, we will not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." Id. at 200 (internal quotation marks and citations omitted). A provision is ambiguous if it is "subject to more than one reasonable interpretation," and "[o]nly where there is genuine ambiguity, that is, where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage, should the reviewing court read the policy in favor of the insured." Ibid. (internal quotation marks and citations omitted). "Consistent with these rules, our courts will enforce exclusionary clauses if 'specific, plain, clear, prominent, and not contrary to public policy,' notwithstanding that exclusions generally

8

'must be narrowly construed,' and the insurer bears the burden to demonstrate they apply." Abboud, 450 N.J. Super. at 407 (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441-42 (2010)).

Turning to the policy terms, the assault-or-battery exclusion bars claims against the insured for bodily injury that arise out of an assault or battery. The estate alleged that Corley intentionally shot Pickett. The estate thereby alleged a "battery," because the policy defines "battery" as an "intentional, reckless or offensive . . . use of force against, a person without his . . . consent that inflicts some injury." Although Corley was convicted of recklessly causing Pickett's death, see N.J.S.A. 2C:11-4(a)(1), his recklessness also satisfies the policy's "battery" definition.

We need not decide whether excluding bodily injury claims "arising out of any act of 'assault' or 'battery'" would alone suffice to bar EMRO's claim for a defense and indemnification of the estate's negligence-based claims. That is because the exclusion of claims arising out of an assault or battery expressly "includ[es] any act or omission in connection with the prevention or suppression of such 'assault' or 'battery.'" Thus, the exclusion plainly encompasses negligent acts or omissions that fail to prevent or suppress the assault or battery. That embraces the estate's general allegation that EMRO negligently failed to exercise reasonable care to assure the tavern was a safe

place. The exclusion also embraces the estate's allegation that, as a result of EMRO's negligent personnel management (i.e. hiring, training and retention), EMRO's staff did not prevent Corley from shooting Pickett. Specifically, staff allowed Corley to enter with a gun, allowed him to retain the gun throughout the evening as he became more intoxicated, and did not intervene when he began arguing with Pickett.[6]

In Stafford, we found that a differently worded assault-or-battery exclusion barred the insured's claim for a defense and indemnification. The underlying suit involved the bodily injury claims of three nightclub patrons who were shot by fellow patrons. 309 N.J. Super. at 104-05. The plaintiffs asserted claims of inadequate security, and negligent employee hiring, training and supervision, among other claims. Id. at 101. However, the policy specifically mentioned forms of negligent personnel management, as well as "any other negligent action." Id. at 104.

Like the Northfield policy, the nightclub's policy generally excluded claims arising out of an assault or battery, stating, "NO coverage of any kind (including but not limited to cost of defense) is provided by this policy for Bodily Injury and/or Property Damage arising out of or caused in whole or in

---

[6] With respect to the liquor exclusion, one may distinguish between the decision to continue to serve Corley alcohol, and the decision to allow him to retain his weapon.

part by an assault and/or battery." Ibid. Referring to negligence-based claims, it added, "Further, NO coverage is provided if the underlying operative facts constitute an assault and/or battery irrespective of whether the claim alleges negligent hiring, supervision and/or retention against the insured or any other negligent action." Ibid.

We reversed the trial court, which found the provision ambiguous. We rejected the insured's argument that the provision should be interpreted to exclude claims related to assaults or batteries that the insured's own employees committed. Id. at 104. We held that the "Further" clause did not limit the exclusion's scope; rather, it provided, "by way of example" that it encompassed claims of "'negligent hiring, supervision and/or retention' which are obvious refuges for a plaintiff seeking to avoid the assault and battery exclusion." Id. at 105. We noted that the "sentence goes on to include 'any other negligent action' thus placing the insured on notice that it is the facts of the case and not the craft of the plaintiff's lawyer which will determine the applicability of the exclusion." Ibid.

We reject EMRO's contention that Stafford is of little import, because the policy exclusion in that case expressly referred to "negligent hiring, supervision and/or retention" of employees. In some respects, the Northfield exclusion is clearer than the one in Stafford, because it expressly refers to both

"acts" and "omissions" that would prevent or suppress the assault or battery; the exclusion in Stafford refers only to "any other negligent action." Without doing so expressly, the Northfield policy excludes claims of negligent hiring, training, supervision or retention, by referring broadly to "any act or omission" that could prevent or suppress the assault or battery.

We also reject EMRO's contention that L.C.S., in which the court found that a bar was entitled to a defense and indemnification, compels us to find the Northfield exclusion does not clearly exclude coverage for the estate's negligence-based claims against EMRO. L.C.S. involved a policy exclusion much like Northfield's. The exclusion stated that the insurance did not apply to bodily injury and certain other claims "arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts," adding (unlike the Northfield policy), "whether caused by or at the instigation of or direction of the Insured, his employees, patrons or other persons." 371 N.J. Super. at 487.

The nature of the plaintiff's underlying claims distinguish L.C.S. from this case. In a three-count complaint, the bar patron in L.C.S. claimed: (1) a bar's bouncer intentionally assaulted him by punching him in the face; (2) the bouncer negligently performed his duties; and (3) the bar negligently hired, trained, employed and supervised its bouncers and employees. Id. at 486-87.

12

Thus, the bar's alleged negligence in managing its bouncers, was both (1) an act or omission in connection with a bouncer's assault, and (2) an act or omission in connection with a bouncer's negligence. The exclusion would plainly not encompass the latter.

The L.C.S. court recognized that "[i]t is the nature of the claim for damages, not the details of the accident or the ultimate outcome, which triggers the obligation to defend," and "[w]hen multiple alternative causes of action are set forth, the duty to defend will continue until every covered claim is eliminated." Id. at 490. The court recounted that at trial, neither the patron-plaintiff nor his witnesses said "whether he was intentionally assaulted or negligently injured while being escorted from the bar." Id. at 489. The plaintiff ultimately settled with the bar based on his complaint's second count, which alleged the bouncer's negligence. Ibid. The L.C.S. court held that if the patron's "injuries were caused by a negligent act unrelated to the assault and battery, as he allege[d] in count two of the complaint, then the exclusion relied on by [the insurer] is clearly inapplicable." Id. at 494.

In contrast, the Pickett estate did not alternatively allege that Corley negligently shot Pickett. The bar's alleged negligence was connected only with an assault or battery. Thus, the Northfield policy's exclusion encompasses the estate's claim against EMRO.

13

We acknowledge that the L.C.S. court considered it significant that the policy exclusion in Stafford explicitly referred to negligent personnel management. The L.C.S. court stated that absent such an explicit provision, "it is not clear to the average reader that the . . . exclusion covers the alleged negligent activity in the third count of the [bar patron's] complaint." Id. at 492. The third count alleged negligent hiring, training, employment, or supervision of the insured's bouncers and employees; and alleged the bar patron's injuries resulted from that negligence.

We do not share that view about the necessity of explicitly referring to personnel management, for the reasons we have already stated in discussing Stafford. The Northfield policy broadly excludes damage claims "arising out of . . . any act or omission in connection with the prevention or suppression of such 'assault' or 'battery'". The average reader would have no difficulty understanding that the policy thereby excludes claims that an insured could have prevented an assault, had it not negligently managed its staff, or negligently failed to maintain a safe environment for its customers. As noted, we will not "engage in a strained construction to support the imposition of liability." Templo Fuente, 224 N.J. at 200.

Furthermore, the L.C.S. court's assessment of the "average reader" was unnecessary to its decision. The insurer in L.C.S. was obliged to defend and

indemnify because the negligent management of personnel alleged in count three of the L.C.S. complaint was connected to the negligently caused injury as alleged in count two, not an assault or battery.

Our interpretation of the Northfield exclusion also finds support in the persuasive decisions of other courts. We recognize the variability of assault-or-battery exclusions in commercial general liability policies. One treatise identifies a "standard" CGL policy exclusion that includes elements from the Northfield policy, as well as the policies in L.C.S. and Stafford. It states:

> Restaurants, bars, taverns, night clubs, fraternal and social clubs endorsement:
>
> The coverage under this policy does not apply to "bodily injury," "property damage," "personal and advertising injury," or any injury, loss or damage arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision.
>
> [Miller's Standard Insurance Policies Annotated 721.A (7th ed. 2019).]

However, courts have found unambiguous virtually the same exclusion found in the Northfield policy, or the policy in L.C.S. In St. Paul Surplus Lines Insurance Co. v. 1401 Dixon's, Inc., 582 F. Supp. 865, 866 (E.D. Pa.

1984), the policy mirrored the one in L.C.S.  Applying Pennsylvania law, the court issued a declaratory judgment that the policy excluded the insured bar's claim for indemnification and coverage arising out of a patron's death.  The victim's mother sued the bar.  She alleged that after participants in a barroom brawl were told to take their dispute outside, one of the participants violently struck her son from behind as he happened to stumble upon the brawl.  Id. at 867.  The victim's mother alleged her son was assaulted and the bar was negligent in failing to prevent or stop the fight and to maintain order.  Ibid. The court held the policy exclusion was "clearly worded and free from ambiguity."  Id. at 869.  The court reasoned that the exclusion "extends beyond the actual assault and battery to cover injuries arising 'out of any act or omission in connection with the prevention or suppression' of an assault and battery.  This clause applies . . . to negligence in failing to stop or prevent its occurrence."  Id. at 868.  See also Essex Ins. Co. v. Yi, 795 F. Supp. 319, 324 (N.D. Cal. 1992) (following St. Paul Surplus Lines in interpreting a similar exclusion under California law).

Applying Maryland law, the court in First Financial Insurance Co. v. GLM, Inc., 88 F. Supp. 2d 425 (D. Md. 2000), reached the same conclusion. The exclusion in that case mirrored Northfield's.  Id. at 427.  The insured bar sought a defense and indemnification related to a stabbed patron's personal

injury complaint. The patron alleged that the bar failed to provide adequate security, because the doorman left his post, allowing the perpetrator to reenter the bar after he was ejected; and the bar negligently hired incompetent staff. The court found that both allegations qualified as claims "arising out of defendant's '. . . omission in connection with the prevention . . . of an assault or battery' causing [the victim's] bodily injuries." Id. at 429-30. See also Acceptance Ins. Co. v. Winning Concepts of Westport, Inc., 842 S.W.2d 206, 208 (Mo. Ct. App. 1992) (holding that "[n]egligently hiring persons with violent propensities which negligence results in an individual being assaulted and battered is an act or omission in connection with the prevention or suppression of assault and battery and therefore is excluded under the terms of the policy"); Hernandez v. First Fin. Ins. Co., 802 P.2d 1278, 1280 (Nev. 1990) (stating that "negligent hiring constitutes a failure to prevent an assault and battery" and "[f]ailure to prevent an assault and battery is covered by the broad language in this particular exclusion, which refers to 'any . . . omission in connection with the prevention' of assault and battery"). See generally, Kimberly J. Winbush, Validity, construction, and effect of assault and battery exclusion in liability insurance policy at issue, 44 A.L.R.5th 91, § 8 (1996) (addressing "[e]xclusions for assault and battery and any act in connection with the prevention or suppression of assault and battery").

In sum, we are persuaded that the assault-or-battery exclusion in EMRO's policy with Northfield precluded EMRO's claim for indemnification of its defense costs and its share of the settlement paid to the estate. To the extent not addressed, EMRO's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-2330-17T2