**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3791-19

AMERICAN PROPERTIES
AT MADISON, LLC, a New
Jersey Corporation, Individually
and as assignee of First Specialty
Insurance Company in Connection
with all claims made by First
Specialty Insurance Company in
this matter,

     Plaintiff-Appellant,

v.

INTERSTATE FIRE AND
CASUALTY COMPANY AND
CRUM & FORSTER SPECIALTY
INSURANCE COMPANY,

     Defendants-Respondents.

_____

Submitted June 9, 2021 – Decided July 13, 2021

Before Judges Fuentes, Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0996-16.

Hutt & Shimanowitz, PC, attorneys for appellant (Bryan D. Plocker and Thomas J. Perry, on the briefs).

Rivkin Radler, LLP, attorneys for respondent Interstate Fire and Casualty Company (Michael A. Kotula, of counsel and on the brief).

Kennedys CMK, LLP, attorneys for respondent Crum & Forster Specialty Insurance Company (Gary S. Kull and Tara E. McCormack, of counsel and on the brief).

PER CURIAM

In this insurance coverage dispute, plaintiff American Properties at Madison (APM) individually and as assignee of First Specialty Insurance Company (FSIC), appeals from three separate orders entered September 4, 2018; the April 23, 2019 denial of its motion for reconsideration; and the April 30, 2020 order granting summary judgment to defendants Crum & Forster Specialty Insurance Company (C&F) and Interstate Fire and Casualty Company (Interstate). We affirm for the reasons expressed by Judge Janetta D. Marbrey in her thorough written opinion issued with the September 4, 2018 orders.

APM was the developer that sponsored, designed, and built Madison at Ewing Condominium (Condominium), a six-building housing complex that includes 192 dwelling units and common elements. The Madison at Ewing Condominium Association (Association) filed a complaint on October 29, 2013, asserting damages related to the construction of the dwellings and common

2

elements at the Condominium (the underlying litigation). The Association's complaint alleged that APM's subcontractors were negligent, resulting in damage. Various causes of action were listed, but in large part, the underlying litigation was about the exterior walls causing damage by allowing water intrusion. The issue in this litigation, regarding coverage under insurance policies, revolves around the materials used to construct the exteriors and when the water intrusion began.

Three insurance providers issued general liability policies to APM for the Condominium. Each policy was applicable to a different time period in the underlying litigation. C&F insured APM through three contiguous yearlong policies extending from May 1, 2005, to May 1, 2008. Interstate's two contiguous policies with APM were in effect from May 1, 2008, to May 1, 2010; FSIC's four contiguous policies were effective May 1, 2010, to May 1, 2014. FSIC provided coverage, but C&F and Interstate disclaimed coverage.[1]

---

[1] The underlying litigation was settled for $925,000, with FSIC contributing $600,000 and APM contributing $325,000.

On May 12, 2016, FSIC sued C&F and Interstate, seeking a declaration that both had a duty to defend and indemnify APM and to recover fees. APM later intervened, and FSIC eventually assigned its claims to APM.[2]

C&F asserted that the three policies barred coverage for APM's work and the work of its subcontractors for Exterior Insulation and Finish Systems (EIFS).[3] C&F's two policies between May 2005, and May 1, 2007, contained express exclusion clauses, and the proofs established that EIFS was installed throughout the multi-year project. Consequently, C&F also asserted that a continuous or progressive injury and damage exclusion barred coverage under its 2007-2008 policy.

Interstate also denied coverage for plaintiff's claimed damages in the underlying litigation and said it would not defend or indemnify APM. Interstate relied on the pre-existing damage exclusion in its two policies with APM. Pointing to consultant reports that informed the Association's complaint, Interstate asserted that, according to the reports, the damage at the buildings began to occur immediately following the completion of construction between

---

[2] A consent order was entered, granting amendment of the caption.

[3] EIFS is essentially synthetic stucco.

4

July 2005 and July 2006, well before the inception date of the two Interstate policies, which were effective from May 1, 2008, to May 1, 2010.

On August 1, 2017, FSIC[4] moved for summary judgment seeking the following declarations: (i) that defendants' policies cover claims asserted against APM in the underlying litigation; (ii) that defendants must reimburse FSIC for amounts incurred defending and indemnifying APM; and (iii) that they must defend and indemnify APM in the underlying litigation. C&F cross-moved for summary judgment, arguing its three policies do not cover APM with regard to the underlying action. Interstate also moved for summary judgment.

In May 2018, the court heard the oral arguments on all summary judgment motions, and on September 4, 2018, issued the first three of the five orders under appeal, accompanied by a lengthy, thorough written opinion. First, the court granted C&F's summary judgment motion in part, because it was evident that EIFS was present in six buildings and was used in the construction of the project during the two coverage periods spanning 2005-2007. Addressing the 2007-2008 coverage year, the court granted summary judgment for that time period under the continuous progressive injury and damage exclusion. The court denied the exclusion of coverage for masonry cracks because, unlike the

---

4 APM joined FSIC's motion.

allegations of continuous trigger theory for water damage, the factual record did not support exclusion for the masonry failure.[5] Thus, the court ordered APM to satisfy the self-insured retention clause for the 2007-2008 policy term.

The second September 4, 2018 order granted Interstate's motion for exclusion of EIFS and enforced the pre-existing damage exclusion and dismissed the complaints against it. The third September 4, 2018 order denied APM's motion for summary judgment.

Subsequent motions for reconsideration by APM and C&F were denied on April 23, 2019. One year and one week later, the trial court issued an order for final judgment. This appeal followed.

On appeal, plaintiff argues the court erred as a matter of law when it determined the EIFS exclusions, the pre-existing damage exclusion, and the continuous progressive injury and damage exclusions barred recovery, and that C&F and Interstate had no duty to defend APM.

We apply the same standard as does the trial court when deciding a summary judgment motion. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Summary judgment should be entered

---

[5] The parties agreed to forgo a trial on the masonry issue and consented to final judgment.

by the trial court "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

Our review of summary judgment is de novo. Dep't of Envt'l Prot. v. Kafil, 395 N.J. Super. 597, 601 (App. Div. 2007). We accord no special deference to the trial court, because a decision to grant summary judgment does not involve an assessment of the credibility of testimony or determinations of fact, but instead, is a ruling on a question of law. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Our Supreme Court has held that policy exclusions are "presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997) (quoting Doto v. Russo, 140 N.J. 544, 559 (1995)). As the Supreme Court noted, insurance policy limits and exclusions function "to restrict and shape the coverage otherwise afforded." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 237 (1979).

Unquestionably, the EIFS exclusions in the Interstate and C&F policies expressly bar coverage for property damage arising out of the use of EIFS in the

buildings' construction. APM does not dispute that property damage was taking place while the buildings were being constructed, the construction was completed in July 2006, and the C&F policy at issue with began in 2007 and included an express bar to coverage for EIFS.

APM argues C&F did not present adequate proof of the presence of EIFS at the buildings and that any references to EIFS in the underlying litigation were inconsistent and insufficient to lead the motion judge to conclude that the burden had been met. APM also contends C&F should have proven the presence of EIFS with expert testimony. We disagree.

The motion judge found adequate support for application of the EIFS exclusions here, writing:

> These proofs include the twenty separate work orders issued by [APM] to subcontractor Stucco Systems; the 2008 Kipcon Report, created by the Kipcon consulting company[,] the Falcon's Group Proposal, created by the Falcon's Group consulting company[,] and the FWH Transition Study, created by the FWH consulting group. Use of EIFS is also noted in the correspondences shared between counsel for [APM] and the Association.

Indeed, the record includes correspondence from counsel for APM to Association counsel in 2011, stating that APM would make repairs related to EIFS at the site, specifically "[i]nadequate finish on <u>EIFS</u> band fiberglass mesh

8

visible" and a "[c]rack across full stucco width through EIFA [sic] corners." The judge found APM "cannot contest the use of EIFS in the construction" of the project, which precludes coverage under C&F's 2007-2008 policy period. Thus, we conclude the motion judge's decision supporting the EIFS exclusion is supported in the record.

APM also argues the continuous-trigger theory of coverage applies, as we held in Air Master & Cooling, Inc. v. Selective Insurance Co. of America, 452 N.J. Super. 35, 47 (App. Div. 2017). The "continuous trigger" is a theory that states the "last pull" of the trigger, which decides the end point of when a covered "occurrence" takes place, "happens when the essential nature and scope of the property damage first becomes known, or when one would have sufficient reason to know of it." Id. at 38. However, that is not what occurred here. C&F and Interstate's relevant policies exclude continuous and progressive property damage and the damage was progressing as early as 2005, which was before the coverage period.

Interstate further argued that the pre-existing damage exclusion was settled by the New Jersey Supreme Court in Cypress Point Condominium Association v. Adria Towers, LLC, 226 N.J. 403 (2016). Although factually different than here, Cypress Point nonetheless supports Interstate's assertion. In

Cypress Point, the insurers of a condominium development argued that "subcontractors' faulty workmanship did not constitute an 'occurrence' that caused 'property damage' as defined by the policies." Id. at 411. Interstate also asserted that the damage was barred from recovery because "faulty workmanship is not 'property damage' or an 'occurrence' under the terms of the policies . . . ." Id. at 413. The Court held that the condominium association's claims of water damage from subcontractors' defective workmanship should be considered an "occurrence" and "property damage" through the effective policies, thus precluding summary judgment in the insurers' favor. Id. at 432.

Here, unlike in Cypress Point, the "occurrence" of property damage at the Condominiums began prior to the inception of respondents' applicable insurance policies. Interstate's policy language specifically bars coverage for such damage, as does the C&F 2007-2008 policy. APM introduced evidence in the underlying litigation that supports this timeline: damage was "continuous in nature from the time of the installation of the façade and will continue until such time as the entire envelope is removed and replaced with a working barrier." As Judge Marbrey found, "commensurate with [APM's] own admission as to the time damages were first alleged, all 'property damage' is admitted to have begun before the inception of the 2007-2008 [C&F] policy." "In the present case,

'property damage' first manifested in 2005 and continued to manifest well into the 2006-2007 policy year." This serves to bar coverage under C&F's 2007-2008 policy period. We conclude, therefore, the continuous and progressive damage exclusion in its policy language applies to bar coverage as to water intrusion.

Notably, the motion judge rejected the application of the continuous-trigger theory to cracks in the buildings' masonry. Although water damage was noticed in December 2005, the trial court did not find evidence to support a similar "initial manifestation point of the masonry cracks." Accordingly, it denied C&F's motion for summary judgment as to the defective masonry.

Finally, "[t]he duty to defend is triggered by a complaint alleging a covered claim." Polarome Int'l, Inc. v. Greenwich Ins. Co., 404 N.J. Super. 241, 273 (App. Div. 2008) (citing Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992)). "An insurer's duty to defend an action against the insured is determined by whether the allegations set forth in the complainant's pleadings fall within the purview of the policy language." L.C.S., Inc. v. Lexington Ins. Co., 371 N.J. Super. 482, 490 (App. Div. 2004) (citing Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512 (1965); Voorhees v. Preferred Mut. Ins. Co., 246 N.J. Super. 564, 569 (App. Div. 1991)).

Here, the record referenced a long history of water intrusion at the site, beginning at completion of the construction. Because there was no duty to indemnify APM, it cannot claim that C&F's and Interstate's duty to defend was triggered.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION